RIVERBANK IMPROVEMENT COMPANY & another *vs.* CORNELIA H. BANCROFT & another.

Suffolk. December 1, 1910. — May 20, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Equitable Restrictions. Garage. Deed. Equity Jurisdiction,* To enforce equitable restrictions. *Equity Pleading and Practice,* Decree. *Words,* " Usual outbuildings appurtenant," " Stable."

Provisions in a deed of one of several lots of land all included in a parcel owned by one person, which impose upon the land conveyed, for the benefit of the grantor and of those from time to time owning other lots in the parcel, restrictions as to the character of buildings to be placed thereon, must be interpreted in the light of the circumstances as they existed when the deed was made.

The owner in 1890 of a large parcel of land at a distance from the business section of Boston in the Back Bay district, so called, subdivided it into twenty-eight

lots and, with the intention of making the territory a fine residential district, in selling and conveying the lots to purchasers made uniform deeds containing restrictions limiting the use of the lots to dwelling houses for the occupancy of one family, which were to be built of brick, stone or iron, and within certain parts of the lots, and the following restriction : " No stable of any kind, private or otherwise, shall be erected or maintained on any portion of said land." In 1899 one of such lots was conveyed by a deed containing such restrictions, imposed for the benefit of owners of the other lots in the parcel, to a person who built and maintained thereon a garage. *Held*, that, interpreting the word " stable " in the light of the circumstances existing at the time when the restriction was imposed, the maintenance of the garage was not a violation of the restriction against the maintenance of a stable.

The owner in 1890 of a large parcel of land at a distance from the business section of Boston in the Back Bay district, so called, subdivided it into twenty-eight lots and, with the intention of making the territory a fine residential district, in selling and conveying the lots to purchasers made uniform deeds containing restrictions limiting the use of the lots to dwelling houses for the occupancy of one family, which were to be built of brick, stone or iron and within certain parts of the lots, and the following restriction: " No buildings other than dwelling houses . . . with the usual outbuildings appurtenant thereto, shall be erected, placed, or used upon the said land." In 1899 one of such lots was conveyed by a deed containing such a restriction, imposed for the benefit of owners of the other lots in the parcel, to a person who built and maintained thereon a garage. *Held*, that the garage was not such an outbuilding as usually was appurtenant to a dwelling house in the locality in question in 1899, and that therefore its maintenance was a violation of the restriction.

Restrictions, contained in deeds in 1899 and previous thereto, of lots of land in a parcel situated at a distance from the business section of a city, which were intended to maintain the territory as a fine residential district, and which therefore prohibited the maintenance on any of the lots of a garage, are not an unreasonable hindrance to the use of the land and are not against public policy.

Where a corporation, which owned a large parcel of land, subdivided it into twenty-eight lots, which were sold to various persons, the deeds of conveyance containing certain uniform valid restrictions as to the use of the lots stated therein to have been imposed " for the benefit of the grantor and of the owner or owners from time to time of all " of the lots, the corporation, even after it no longer owns any land in the parcel, and the owner of one of the lots properly can join as plaintiffs in a suit in equity to restrain the owner of another one of the lots from violating the restrictions.

The owner of one of twenty-eight lots of land included in a parcel, all of which were subject to a restriction imposed in 1899, which this court interpreted as preventing the building or maintaining thereon of a garage, brought a suit in equity to enjoin the owner of another lot from continuing with the erection upon his lot of a garage which he had begun to build. The erection and maintenance of " usual outbuildings appurtenant " to brick dwelling houses built for the occupancy of one family were permitted by the restrictions. The defendant, while the suit was pending, completed the garage and used it as such and also as " a place to keep vegetables, double windows, blinds, and other minor household things," uses for which it was intended when it was erected, and also as a place in which to freeze ice cream and " do other small household things," and during the summer to lock up " barrels and other things about the yard." The building itself was not a nuisance and did not obstruct the view from windows

in other houses in the parcel. *Held,* that justice would be done by a decree simply compelling the defendant to cease to use the building as a garage or as a storehouse for an automobile, and ordering the removal of the building unless it be used for a purpose not inconsistent with the restrictions.

BILL IN EQUITY, filed in the Supreme Judicial Court on November 8, 1907, by the Riverbank Improvement Company and Albert E. Pillsbury against Cornelia H. Bancroft and her husband Charles F. Bancroft, averring that the defendant Cornelia H. Bancroft and the plaintiff Pillsbury were owners of lots in Block B, described in the opinion, which were subject to the restrictions therein set out, and that the defendants were violating those restrictions in that they had begun the erection upon their land of "a building adapted and intended to be a garage for an automobile or automobiles," and praying that the defendants be restrained from so doing.

Pending the final hearing on the bill, the defendants completed the building and put it to the uses described in the opinion.

The case was heard by *Hammond,* J., who reported it to the full court for determination. The facts are stated in the opinion.

The case was argued at the bar in December, 1910, before *Knowlton,* C. J., *Morton, Hammond, Loring,* & *Sheldon,* JJ., and afterwards was submitted on briefs to all the justices.

*H. M. Williams,* (*T. E. Stevenson* with him,) for the plaintiffs.

*W. A. Rollins,* for the defendants.

HAMMOND, J. The physical facts as to the size, situation and construction of the building in question are not in dispute, and the defendants admit that the building is being used by them as a garage for their own automobiles and that unless restrained by legal process they intend to continue such use. The main question on the merits is whether in the building itself or in such a use of it there is anything inconsistent with any of the restrictions to which the land is subject.

Those restrictions were imposed in the deed of the Riverbank Improvement Company, hereinafter called the company, to George Wheatland (under whom the defendants claim by mesne conveyances) dated August 11, 1899, and duly recorded; and so far as material to the question before us they are as follows :

" First. No buildings other than dwelling houses (which word shall include club houses), with the usual outbuildings appurtenant thereto, shall be erected, placed, or used upon the said land. Such outbuildings shall be erected only on the southerly side of said twenty-foot street or way, and no portion of said outbuildings shall be higher than eight feet above the grade of the street in front of the premises hereby conveyed. No stable of any kind, private or otherwise, shall be erected or maintained on any portion of said land. . . . *

"Second. No building erected on said land shall be used for any manufacturing . . . or mechanical purposes.

" Third. No building, except the customary outhouses to dwellings, shall be erected or placed upon the said land, the exterior walls of which shall be composed of any other material than brick, stone, or iron. . . .†

" Fifth. No buildings, other than the usual outbuildings appurtenant to dwelling houses, shall be erected or placed on said land northerly of a line parallel with and distant seventy feet north from the building line established in the . . . [fourth] . . . restriction. . . ."

The plaintiffs contend that the first restriction has been violated in two respects, namely, first, that the building is not of the kind described as the " usual outbuildings appurtenant " to a dwelling house, and second, that it is a stable within the meaning of that word as used in the restriction.

It becomes necessary to look into the deed and the circumstances under which it was made. About 1890 the plaintiff company acquired title to a large parcel of land and laid it out in building lots. Block B, of which the land conveyed in the

---

* The remainder of the first restriction was as follows : " No building erected on this land shall be used as an apartment house, family hotel or flats, or in design or construction be fitted for occupancy by more than one family."

† Material portions of the fourth restriction were as follows : " All buildings erected on the said land shall be placed upon a line beginning at a point on Sherborn Street, on the easterly side of said piece of land marked Block B on said plan, and twenty feet distant from the northerly line of said Bay State Road, and thence extending westerly to a point on the easterly side of Granby Street five feet distant from the northerly line of said Bay State Road."

above mentioned deed to Wheatland was a part, contained twenty-eight lots. Restrictions like those in this deed had been imposed by the company in the deeds of these lots except that in the deed of lot No. 1, which was the first lot conveyed, the clause prohibiting the erection or maintenance of a stable does not appear. The deeds were all in one standard form, and each contained a recital that the restrictions " are intended and shall be for the benefit of the grantor and of the owner or owners from time to time of all the land aforesaid constituting said Block B shown on said plan, and none other." It is apparent from the form of the deeds and from the other facts shown, that the company intended that this territory, situated upon the south bank of the Charles River and at some distance from the business section of the city, should be a fine residential district, and that it took great pains to frame the deeds in a manner calculated to make this intent effectual not only for the present but also for the future. This was to be a place for dwelling houses and the " usual outbuildings appurtenant" thereto, and (with the exception of club houses) for them alone. Under the law existing at the time those restrictions were imposed they were to have force only for thirty years. R. L. c. 134, § 20. We are dealing therefore not with restrictions unlimited as to use, but limited to thirty years, and the deed is to be construed as if the term of thirty years had been expressly inserted therein. The restrictions are to be interpreted in the light of the circumstances existing at the time they were imposed ; and the words " usual outbuildings appurtenant " (to dwelling houses) as well as the word " stable " are to be construed as including only such buildings as were fairly indicated by the respective words at that time.

Under this rule of interpretation is this building a stable ? In Worcester's Dictionary, edition of 1900, a stable is defined as " a house or building for horses or other beasts"; in Webster's edition of 1903, as " a house, shed, or building, for beasts to lodge and feed in ; especially, a building or apartment with stalls, for horses ; as, a horse stable ; a cow stable "; and in the edition of 1910 in practically the same language ; in the Century Dictionary, as " a building or an inclosure in which horses, cattle, and other domestic animals are lodged, and which is furnished with

stalls, troughs, racks, and bins to contain their food and necessary equipments ; in a restricted sense, such a building for horses and cows only ; in a still narrower and now the most usual sense, such a building for horses only " ; in the Standard Dictionary, edition of 1895, as a " building or part of a building set apart for lodging and feeding horses or cattle, especially one fitted with stalls, fastenings etc., also often for storing hay or putting up vehicles: sometimes specifically carriage-stable, cow-stable, etc." In 36 Cyc. 812, and in 26 Am. & Eng. Encyc. of Law, (2d ed.) 154, it is defined as " a house, shed, or building for beasts to lodge and feed in." See also *Dugle* v. *State*, 100 Ind. 259.

While it is true, as stated by the plaintiffs, that in the Standard Dictionary, editions of 1895 and 1908, a stable is defined as a building often used for putting up vehicles, and that in the Century and Standard Dictionaries a garage is defined as " a stable for motor-cars " and " a building, as a stable or shed, for the storing of automobiles and other horseless vehicles," we nevertheless think that the word " stable " as commonly used and understood at the time of the imposition of those restrictions, especially when contrasted with other buildings usually appurtenant to a dwelling house, carried the idea not only of a building but also the presence of domestic animals like horses or cattle as its occupants, and that such is the meaning of this word in the restriction. Accordingly it must be held that the building is not a stable within the meaning of the restriction. And this is so even if, as argued by the plaintiffs, a garage is as objectionable as a stable.

The next question is whether the building is of the kind which was usually appurtenant to dwelling houses at the time the restriction was imposed. If it is not, then its erection was in violation of the restriction. It is to be borne in mind that we are dealing with a proposed residential district of a high grade, and that this district is not in a country town but in a city, a district to be divided into building lots and to be covered substantially with dwelling houses. Whatever buildings were usually needed and occupied as aids to the use of the dwelling houses might be erected and occupied as such aids. At the time these restrictions were put on, the garage was not the kind of

building usually appurtenant to a dwelling house. Its erection was a violation of the restriction.

It is urged by the defendants that the restriction is against public policy, and that consequently a court of equity will not lend its aid in its enforcement; and they cite some cases where, because the restrictions have been against public policy or were whimsical and tended to place an unreasonable hindrance to the use of land, equity has refused to interfere. But this case is clearly distinguishable. An automobile is a large machine, and it is generally noisy, especially when starting. The odor of gasoline by which many of them are propelled is penetrating and disagreeable; and there can be no doubt that the noises and odors attendant upon the care and action of such machines, especially when stored so near to dwelling houses as in this case, may be annoying to a person desiring a quiet home. If, in these days of noise and bulging, intrusive activities, one who has been in confusion all day desires to have a home where, awake or asleep, he can pass his hours in quiet and repose, there is no reason of public policy why, if he can get it, he should not have it. Nor is there any reason why provision should not be made for a collection of such homes in close proximity to each other. No citation of authorities is needed to show that in this Commonwealth such a restriction is reasonable and not against public policy.

It is further urged that the plaintiffs have shown no right to prosecute this bill.* But this position is untenable. Pillsbury, one of the plaintiffs, is an owner of land for the benefit of which the restrictions were imposed, and the company which imposed the restrictions may, even if no longer an owner, appear to aid in their enforcement for the benefit of their grantees.

The final question respects the relief to be granted. It is urged by the defendants that the building itself does not in any way conflict with the restrictions; that neither in size, location nor in the materials of which it is constructed does it violate the restrictions, and that the only violation consists in its use. And hence they say that the decree should not order the removal of the building, but only forbid its use as a garage. While it ap-

---

* It appeared that the Riverbank Improvement Company at the time of the bringing of the suit owned no property in Block B.

peared that the building was erected principally for the automobile, yet it also appeared that it has been "used as a place to keep vegetables, double windows, blinds, and other minor household things, and was so intended to be used at the time of its erection"; that "it has also been used as a place [in which] to freeze ice cream, and do other small household things"; and that "during the summer barrels and other things about the yard are locked up there." Whether or not, as claimed by the plaintiffs, these facts are contradictory of the pleadings, there can be no doubt that they may be properly taken into consideration on the question of the kind of relief. It further appears that the building is not a nuisance and does not obstruct the view from the windows of the houses in Block B.

Even if the defendants should be ordered to take this building down upon the ground that it was originally constructed for a use inconsistent with the restriction, it is manifest that they might immediately erect one exactly its duplicate for the purposes for which, as above stated, it was intended to be used in part and has been so used. But it is to be noted that the restriction forbade the erection of the building for a garage as well as its use for that purpose.

Under these circumstances we think justice will be done by a decree which will simply compel the defendants to cease the illegal use, and further to remove the building unless it be used for a purpose not inconsistent with the restriction. There should be a decree for the plaintiffs forbidding the use of this building as a garage or a storehouse for an automobile, and for its removal unless it be used for a purpose not inconsistent with the restriction; and for costs.

*So ordered.*