## McNEIL v. GARY.

DEEDS; RESTRICTIVE COVENANTS; INJUNCTIONS.

1. Where all deeds from the original owners of lots in a city subdivision contain the same restrictive covenants designed to carry out the general scheme of improvement of the subdivision; such covenants inure to the benefit of the purchasers and subsequent owners of the lots, and in such case each purchase being induced by the common understanding evidenced by the restrictive covenants, one owner may maintain a bill in equity to compel another to comply with the terms of his grant.

2. The erection on the rear of a lot already improved by a dwelling house, of a stable to be used in a drayage or express and plumbing business, is within the prohibition of restrictive covenants of the original owner's grant, providing that not more than one dwelling house shall be erected on the lot, and that no apartment house or flats of any description shall be erected thereon, and that such building shall not cost less than $3,500 to build, and shall not be used for manufacturing, mechanical, or business purposes of any kind, but solely for dwelling purposes; and may be enjoined in equity by persons to whose benefit such covenants inured. (Mr. Justice VAN ORSDEL dissenting.)

No. 2498. Submitted April 9, 1913. Decided May 5, 1913.

HEARING on an appeal by the complainant from a decree in the Supreme Court of the District of Columbia sustaining a demurrer to, and dismissing, a bill in equity to enjoin a violation of restrictive covenants in a deed of land.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree in the supreme court of the District sustaining the demurrer to appellants' bill and dismissing the same.

The facts, as they appear from the bill, are substantially as follows: B. Francis Saul and others became the owners of a

part of a tract of land known as "Maple Grove," in the District of Columbia, which they caused to be subdivided into blocks and lots, and denominated the same "Saul's Addition to the City of Washington." On the 16th day of April, 1908, they caused a plan of said subdivision to be duly recorded in the office of the surveyor of the District. Appellants Hiram C. and Sarah H. McNeil are joint owners of lot numbered 47 in said subdivision, which they purchased of the grantees of the original owners of said subdivision. The appellant Adam Steinmetz is the owner of lot 41 in said subdivision, which was conveyed to him on April 10, 1909, by said original owners. These two lots are improved by comfortable dwelling houses. The appellee, Roy S. Gary, is the owner of lot 45 in said subdivision, which lot she purchased on October 14, 1909, from said original owners.

This subdivision is one of the most desirable in the District for residential purposes, and the great majority of the lots therein have been sold and are now used exclusively for such purposes, the houses costing from $3,500 to more than $20,000. Each deed from said original owners, B. Francis Saul and others, conveying a lot in said subdivision, contained the following covenants:

"And the party of the second part (the grantee) by accepting these presents, and in consideration of the above grant, doth hereby covenant, promise, and agree, for herself (himself or themselves) her (his or their) heirs, executors, administrators and assigns, to and with the said parties of the first part (the grantors), their heirs and assigns, as follows:

"First. That not more than one dwelling house shall be erected on said lot, and that no apartment house nor flats of any description shall be erected on the same.

"Second. That such building shall not cost less than $3,500 to build, and shall not be used for manufacturing, mechanical, or business purposes of any kind whatsoever, but solely for dwelling purposes."

These covenants were to remain in force for a term of twenty years from January 1, 1906. The appellee, of course,

had notice of these covenants, for not only were they inserted in her deed from Saul and others, but she was required, when she purchased her lot, to sign an agreement of similar import. On the front of appellee's lot is a dwelling house valued at not less than $3,500, and there is being erected on the rear of her lot, and within 150 feet of the residence of one of the appellants, a one-story and loft frame stable about 34 feet long and 30 feet wide, containing five stalls for horses and a large space for wagons and carriages. This structure, when completed, is to be used in a drayage or express business and plumbing business now conducted by appellee or her husband. The bill avers that the operation of this stable, as well as its proposed use, will constitute a violation of said covenants and agreement, and will be in violation of the general plan and scheme of improvement in said subdivision. It is also averred that the proposed use of said stable will constitute a nuisance.

*Mr. C. C. Calhoun* and *Mr. J. Barrett Carter* for the appellants.

*Mr. J. H. Ralston, Mr. F. L. Siddons,* and *Mr. W. E. Richardson* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

In the view we take of the case the averment that the proposed use of said stable will constitute a nuisance may be treated as surplusage. Since all deeds from Saul and others to lots in this subdivision contained the same restrictive covenants, it is apparent, we think, that those covenants were intended to inure, and did in fact inure, to the benefit of the several purchasers of said lots and subsequent owners thereof. As suggested in the bill, these restrictions were designed to carry out the general scheme of improvement of this subdivision. Each purchaser bought his lot with notice of this scheme, and, of course, with knowledge that every other purchaser would be influenced by it. In other words, the common understanding

evidenced by the restrictive covenants induced each purchase. Under such circumstances, it is plain that one owner has a standing in equity to compel another to comply with the terms of his grant. "Equity enforces contracts and covenants in regard to property entered into between prior grantors and grantees, in regard to the use of property, especially if common property or property descending from a common source, against subsequent owners affected with actual or constructive notice of such contracts and covenants." *Trudeau* v. *Field,* 69 Vt. 446, 450, 38 Atl. 162; *Allen* v. *Barrett,* 213 Mass. 36, 99 N. E. 575; *Hano* v. *Bigelow,* 155 Mass. 341, 29 N. E. 628.

Coming to the merits, we proceed to determine whether the erection of this stable is prohibited by the restrictive covenants affecting this subdivision. It must be remembered that this is a proceeding in equity, where forms give way to substance and where intent, gleaned from the language of the instrument and the circumstances surrounding the transaction, must govern. While doubts must be resolved in favor of natural rights and the free use of property, they must be founded on reason. Thus in *Clement* v. *Putnam,* 68 Vt. 285, 38 Atl. 181, A owned a lot the surface of which was some 8 feet below the sidewalk, and conveyed the southerly end of this lot to B, covenanting never to erect any "structure or building" on the part of the lot not conveyed, within 4 feet of the portion conveyed. B erected a building on his lot, and subsequently conveyed the balance of the lot to C, subject to the condition in B's deed. C thereupon erected a building within 4 feet of B's line, and was proposing to fill up the space between the two buildings with earth to the level of the sidewalk. This was held not permissible. The court said: "The fair construction of the deed is that from the lowest level to which it applies, the space shall be kept vacant, and not that it shall be filled in a certain manner; and hence an earth filling may well be deemed a structure within the meaning of the deed. Any other construction would frustrate the manifest intention of the parties to the instrument." In *Brigham* v. *H. G. Mulock Co.* 74 N. J. Eq. 287, 70 Atl. 185, it was held that the erection of a

double house under one roof constituted a violation of a covenant forbidding more than one building to be erected on one lot for dwelling purposes. See also *St. Andrew's Lutheran Church's Appeal,* 67 Pa. 512; *Parker* v. *Nightingale,* 6 Allen, 341, 80 Am. Dec. 632; *Kraft* v. *Welch,* 112 Iowa, 695, 84 N. W. 908; *Rowland* v. *Miller,* 139 N. Y. 93, 22 L.R.A. 182, 34 N. E. 765; 11 Cyc. 1077, 1078.

It is admitted that the subdivision here involved is very desirable for residence purposes, and that all the lots that have been sold are now used exclusively for such purposes. Having these circumstances in mind, what is the reasonable construction to be placed upon the restrictive covenants before us? Each grantee of said original holders covenanted, first, that not more than one *dwelling* house would be erected on his lot, and that no *apartment* house or flat of any description would be erected; and, second, that such building should not cost less than $3,500, and should not be used for manufacturing, mechanical, or business purposes of any kind, but solely for dwelling purposes. It is not disputed that had the appellee erected a bungalow on the back of her lot, and then attempted to devote that structure to any business purpose, or, specifically, to the purpose to which she now proposes to devote the structure she is now erecting, she would be subject to the restraining hand of the court; in other words, that her act would be in violation of said covenants. This, of course, inevitably follows from the language of the covenants, and, we think, as clearly demonstrates the weakness of appellee's position. Those who purchased lots in this subdivision were not so much concerned about the possibility that some dwelling house might be devoted to a business purpose as they were that the subdivision should be exclusively devoted to dwelling purposes. To assume that such purchasers for a moment supposed that these covenants might be construed to mean that stores, moving picture shows, garages, and structures of like character might be erected on those lots, if erected as such, is entirely to disregard the scheme under which this subdivision was to be developed, and is to convict the purchasers of those lots of a lack

of intelligence.  In the first place, the provision that not more
than one dwelling house shall be erected on a lot was intended
to exclude the erection of other structures.  This is·made mani-
fest by the second clause of the first covenant, that no apart-
ment nor flat shall be erected.  The parties evidently feared
that an apartment house or flat might be regarded as a dwelling
house within the meaning of the preceding clause, and hence
expressly excepted it from said class.  The first restriction in
the second covenant, that no such building, that is, no such
dwelling house, shall cost less than $3,500, emphasizes what
was apparently in the minds of the parties, that this sub-
division should be devoted to a good class of dwellings.  The
next clause prevents, in terms, the use of any dwelling house
for manufacturing, mechanical, or business purposes of any
kind.  It seems to us that no one purchasing one of these lots
and accepting a deed containing these covenants could reason-
ably fail to understand that he could not do in one way what
he was forbidden to do in another; in other words, that the
provision that no more than one dwelling house should be
erected on a lot, coupled with the provisions that it should cost
not less than $3,500, and not be used for any other purpose,
meant that this subdivision should be devoted to dwelling, and
not business, purposes.  The result, and not the manner of
achieving it, is material.  Unless these covenants are to be given
this construction, they become a mere jumble of words, and
their obvious intent is frustrated.  We conclude, therefore, that
the court erred in sustaining the demurrer.

The decree will be reversed, with costs, and the cause re-
manded for further proceedings.

*Reversed and remanded.*

Mr. Justice VAN ORSDEL dissenting:

I am unable to concur in the opinion and judgment of the
court.  Restrictions of this nature placed upon the use of real
estate are to be strictly construed against the grantor, and liber-
ally in favor of the grantee.  Granting to defendant the strict

construction of the covenant in the deed which the law accords to him, it amounts to nothing more than that he may only erect one dwelling house, of value not less than $3,500, and he may not use the house for anything but dwelling purposes. With this, and the further limitation as to apartment houses and flats, the restriction is complete.

It is averred in the bill that all purchasers of lots in said addition from the original owners thereof signed an agreement containing the following provision: "The purchaser in accepting and signing this paper agrees that not more than one dwelling house shall be erected on said lot, that no apartment house nor flats of any description shall be erected on same, that such dwelling shall cost not less than $3,500 to build, and it shall not be used for manufacturing, mechanical, or business purposes of any kind, that it shall not be rented, leased, sold, transferred, or conveyed unto or in trust for any negro or colored person, that these covenants shall be effective and remain in force for the term of twenty (20) years from January 1, 1906, and no longer."

Reading the agreement in connection with the covenant in the deed, no other reasonable conclusion can be reached than that it was intended to make this addition a community of detached houses, not constructed in rows or solid blocks, as is too common in this city. The restriction cannot be extended to other buildings, without reading into it something manifestly not intended by the parties, and adopting a rule of construction the converse of that to which defendant is entitled. It will not do to hold that only the dwelling house described in the restriction may be erected on the lot, to the exclusion of all other buildings essential to the profitable and convenient use of the lot. It must be interpreted as excluding only other dwellings, flats, or apartments. In other words, the owner of a lot in this addition can erect any building on his lot consistent with the building regulations of the District, except flats, apartments, and more than one dwelling house. He is not limited in the use of his lot, as held by the court, merely to a dwelling house of the prescribed value, to the exclusion of any other buildings whatso-

ever.  It has been held in *Riverbank Improv. Co.* v. *Bancroft,*
209 Mass. 217, 34 L.R.A.(N.S.) 730, 95 N. E. 216, Ann. Cas.
1912B, 450, that a covenant in a deed providing that "no
stable of any kind, private or otherwise, shall be erected or
maintained on any portions of said land," will not prevent the
erection of a garage.   While the garage was prohibited upon
another ground, on this point the court said:   "Accordingly
it must be held that the building is not a stable within the
meaning of the restriction.   And this is so even if, as argued
by the plaintiffs, a garage is as objectionable as a stable."   It
has also been held that a covenant that not more than one house
shall be erected on a lot did not prevent the erection of a
stable on the rear of the lot.   *Hime* v. *Lovegrove,* 11 Ont. L.
Rep. 252.

The cases cited and quoted in the opinion all apply the
proper construction to covenants of this sort, read nothing
into the restrictions not clearly expressed therein, and might
well be cited as authority in support of my contention in this
case.   Likewise, all averments in the bill, relative to the gen-
eral scheme in mind when the addition was laid out and the
restriction made, are of no importance, since the covenant, be-
ing clear and unambiguous, must stand or fall upon its face.

The decree for these reasons should be affirmed.