# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed May 29, 1916.

JOSEPHINE LANGRALL, ET AL.,
VS.
CHARLES H. SCHULTZ, ET AL.

*John Phelps* and *William P. Bolton* for plaintiffs.

*William A. Wheatley* for defendants.

BOND, J.—

This case has come up only on motion to dissolve a preliminary injunction, but the parties have agreed that a final decision on the whole cause shall now be given. The motion, indeed, presented all questions of law and fact involved in the cause and could only accelerate the complete determination of it.

The plaintiffs sue to enjoin violation of restrictive covenants in a deed to a lot in a newly developed suburban district, "Mt. Alto." A corporation named "The Highland Land Company"

owned this tract and prepared a scheme for its division into lots, improved with residences of a minimum cost; and in the deeds to the purchasers of lots there were inserted, as part of this general scheme, uniform covenants to assure development as intended. The covenants with which this case is principally concerned are:

"Sixth. That said lot, or any part thereof, or any building to be erected thereon, shall never at any time be used or occupied for the manufacture, brewing, distilling or sale of spirituous or malt liquors, or as a tavern, drinking saloon, bone-boiling establishment, tanners, slaughter house, glue, soap, candle, starch, gunpowder or manufacturing purposes, or for any other offensive or dangerous purposes, nor for the keeping of pigs or other animals of offensive character."

"Eighth. The said party of the first part reserves the right to cut the grass on said lot until the said lot is improved, and permission in writing must be obtained from the said party of the first part to construct fences or outbuildings on the above described lot."

While other covenants fixed the character and position of dwellings to be built upon the lots, there was no express prohibition against buildings other than dwellings.

The neighborhood has been built up in a manner usual in suburban development, with the residences built in open spaces ornamented with the usual gardening. Many private garages have been built to the rear of the houses of the owners, usually in the same architectural style as the houses, and in this way and otherwise made as inconspicuous as possible.

The plaintiff, Mrs. Langrall, owns one of the lots and is now building a house on it. It does not appear that she plans to build a garage on her lot.

The defendants own a lot immediately adjoining that of Mrs. Langrall, and they plan to build a house there, and in the rear a garage of five compartments, one to be used for the housing of his own car and four to be rented out. The garage building is to be of brick, substantially fireproof, without any architectural treatment at all. They do not intend to store gasoline about the building, or to do otherwise than to provide separate housing

for the five cars. It would be but a slight extension of use of the lot beyond that of a private garage. It differs in being larger, in that it is in design as in fact a business structure; and doubtless noises and other disagreeable incidents to the housing of motor cars would here be multiplied.

The plaintiff, Mrs. Langrall, contends, however, that in just these elements the building of the garage would violate the sixth covenant of the deeds. And she also contends that the eighth covenant would be violated because the defendant has not been given the written permission required by it. It is to enforce the restriction in the eighth covenant that the receiver of the Highland Land Company has been joined as plaintiff. And by reason of the consequent violation of both covenants an injunction against the building is sought.

Many neighboring lot owners have testified to the effect such a use would have upon surrounding property, in their opinions, and to the offensiveness and danger which they would anticipate from it. It is objected that the projected garage would at once multiply noises and smells to a degree that would make it offensive to them, and that by concentrating moving cars there it would endanger children. It is not considered that a garage for one or two cars is offensive within the meaning of the covenant. Objection is made, too, that this five-unit garage would disfigure the neighborhood. But I take it to be the main objection that the building of this garage marks the invasion of the neighborhood by commercial uses. In itself it is a small departure in that direction; but it is feared as the beginning of a change in the character of the neighborhood which would destroy the attractions that have led to the present settlement there.

In this case, as in many others, there seems to have been some misconception of the restriction by the purchasers of lots. Their testimony suggests that they make little or no reference to the actual covenants, but rather assume that "restricted districts" are always restricted in substantially the same respects, always restricted at least to residences. Of course, however, a restriction is only the result of one clause or another in

the deeds, and is no greater and no less than the particular clause which embodies it. So the question raised by the bill is whether the erection of the projected garage would violate the two covenants quoted. And the sixth covenant will be considered first.

The principles of construction followed in reported cases on similar covenants have varied. It is frequently stated that being in derogation of ordinary rights of ownership they should be constructed strictly and rather to favor freedom in the use of land conveyed. This is the principle long applied to restrictive covenants generally. Other cases do not go so far as to take sides against the covenant, but do follow the ordinary principles of verbal construction, referring to the general purpose sought to be attained for assistance in the interpretation of words where necessary. Easterbrook vs. Hebrew Ladies Orphan Society, 85 Conn. 289. Still others seem to me rather, by pursuing the general purpose, to arrive at a construction that transcends the terms of the covenant. That seems at least to be the tendency of the majority of the judges in Nussey vs. Provincial Bill Posting Co., L. R., 1 Ch. D. (1909) 734.

The result of the authorities I take to be this: The old rule of strict unfavorable construction of a restrictive covenant has been found too sweeping and inappropriate to such a restriction as this, because it is untrue to say that any principle of law or of policy requires the courts to discourage it.

"If, in these days of noise and bulging, intrusive activities, one who has been in confusion all day desires to have a home where, awake or asleep, he can pass his hours in quiet and repose, there is no reason of public policy why, if he can get it, he should not have it."

Riverbank Improvement Co. vs. Bancroft, 209 Mass. 217.

At the same time there is no reason for a disposition on the court's part to extend the restriction of the covenant for the benefit of the persons seeking protection from it. On the contrary, however much the court might sympathize with an effort to keep inviolate such a suburban residence section, it is vastly more impor-

tant that covenants deliberately framed and accepted by the parties to define their rights and obligations shall continue dependable and assured of enforcement according to their ordinary meaning. Therefore, the covenant stands for construction as any other, neither with favor or disfavor, but to be examined, by the ordinary rules, for the meaning of the parties, and to be applied according to that meaning.

I think it necessary to observe, however, that the ordinary rules of construction may be followed too far, and may mislead instead of aiding. They are not commanding; here as elsewhere they yield to intention otherwise appearing. "They point out the reasonable ground of inference and may be more properly considered as the aids and instruments of ratiocination than as the authoritative rules of law."

I have dwelt at length on the principles of construction, the approach, so to speak, because the prohibition of a use that is "offensive or dangerous" is very vague, dependent as it is for its meaning upon such an uncertain element as the sensibilities of neighbors, and so left open to construction varying widely according as it is approached. Courts have in fact arrived at widely different conclusions in construing similar prohibitions.

This sixth clause has apparently been copied from a much older conveyance. "Taverns" and "Bone-boiling" establishments belong to an earlier time. It seems to me clear that it does not prohibit use of the lots for any commercial purpose whatever. The careful specification of commercial uses to which the lot shall not be put amounts almost to an express permission to put it to some other commercial uses—those at least which are not offensive or dangerous.

In construing the words "other offensive or dangerous purposes," I think it not sufficient merely to give them a meaning *ejusdem generis* with the offensive or dangerous purposes previously specified.

"Manufacturing purposes," mentioned just before, form a broad general class and it is only reasonable to construe the final general words to be even more broadly comprehensive than this class. But the whole clause still gives an indication of what is in mind

as an offensive or dangerous purpose. It is, of course, incapable of definition which will decide all cases in advance, and in any decision there is no certainty.

Offense from the mere invasion of the commercial element involved in the use of this garage is, as I have said, not within the prohibition. The mere fact that it is to be a garage, housing motor cars, does not bring it within, for private garages have been erected generally by persons interested, and this amounts to a practical construction of the restriction which the court should adopt. Such offense or danger as may arise from elements beyond these, from the multiplication of noises and smells, the increase of the number of moving cars in the immediate vicinity, the increase of fire risk, are all very slight, and they do not, I think, come within the meaning and intention of the prohibition of use for offensive and dangerous purposes.

My conclusion is, then, that the erection of the compartment garage and its use as described by defendants, is not offensive or dangerous within the meaning of the sixth restrictive covenant, and so cannot be enjoined as a violation of it.

The eighth covenant clearly intends that no outbuilding at all shall be erected unless and until permission of the land company in writing is obtained. And I see no reasonable construction but that it is for the purpose of preventing the erection of unsightly or otherwise annoying buildings, for the benefit of the whole section. The decision in Peabody Heights Company vs. Willson, 82 Md. 186, on a similar provision, seems to me to render further study of the covenant unnecessary. In that case a requirement that designs for buildings should be approved by the directors of the selling company was held to be enforceable by the company or by the owner of any lot within the section embraced in the general scheme of improvement. The consequence of that decision seems to me obvious. The only escape from the prohibition of the covenant must, as I see it, be upon the ground that the company and the lot owners have lost their claim to enforcement in equity by ignoring the requirement in the erection of the private garages now standing in the section. All those garages were, as far as appears from the testimony, erected without any such written permission, most of them without any permission or any regard for the covenant at all. This fact, it would seem, establishes an abandonment of it by the company, and each lot owner who has himself violated it has disqualified himself for complaining of another's violation.

Meaney vs. Stork, 81 N. J. Eq. 210.

Sutcliffe vs. Eisele, 62 N. J. Eq. 222.

But this disqualification does not extend to a lot owner who has not built any outbuildings, and so has not violated the covenant; it does not extend to Mrs. Langrall.

Brigham vs. Mulock Co., 74 N. J. Eq. 287.

The principles applied by the Court of Appeals in the Wilson case would seem to impose a heavy burden upon lot owners under such a covenant now and through all time hereafter, even when the selling company is out of existence. But they are the law, and being so, the result in this case follows clearly. The defendants cannot build the garage or any outbuildings at all without the written permission of the selling company, and an injunction must issue to restrain them from so doing.

A decree will be signed accordingly.