WILLIAM T. BUIE AND WIFE MARTHA BUIE, ET AL. v. RICHARD C. JOHNSTON

No. 8318SC628

(Filed 3 July 1984)

**Deeds § 20.7; Injunctions § 15— restrictive covenant in subdivision—structure changed to acceptable use—enforcement of injunction to remove not required**

Where plaintiffs obtained a mandatory injunction ordering defendant to remove an incomplete structure which violated restrictive covenants in their subdivision, plaintiffs commenced contempt proceedings when defendant failed to comply with the injunction, defendant responded that he had abandoned his plan which violated the covenants and intended instead to use the foundation for a garage in conformity with the restrictive covenants, and defendant claimed that enforcement of the injunction would no longer be equitable and moved for relief under G.S. 1A-1, Rule 60, the trial court erred in limiting the evidence it considered in ruling on defendant's motion when it improperly excluded certain questions regarding plaintiffs' vengeful motive; moreover, the court erred in limiting its wide equitable discretion and requiring defendant to remove the foundation, since the purpose of the injunction was clearly to insure compliance with the intent of the restrictive covenants; the covenant at issue clearly permitted construction of a garage; and defendant should not be required to remove a serviceable foundation in slavish obedience to the wording of an injunction where its purpose could be accomplished by more economic, less destructive means.

APPEAL by defendant from *Washington, Judge*. Judgment entered 14 January 1983 in Superior Court, GUILFORD County. Heard in the Court of Appeals 6 April 1984.

*Robert R. Schoch for defendant appellant.*

*Boyan, Nix & Boyan, by Clarence C. Boyan and Robert S. Boyan, for plaintiff appellees.*[1]

BECTON, Judge.

I

Defendant, Richard C. Johnston, commenced construction of a second home on his property in violation of restrictive covenants

---

1. We note that the caption of the Record on Appeal lists the plaintiffs as William T. Buie and wife Martha Buie, et al. This is contrary to Appendix B of the North Carolina Rules of Appellate Procedure which requires that the caption reflect the title of the action as it appeared in the trial division. All parties should be named.

governing land use in the subdivision. Plaintiff neighbors, including the Buies (the Buies), sued to stop construction, obtained an injunction, and on appeal, this Court held that the Buies were entitled to a mandatory injunction ordering the removal of the incomplete structure. *Buie v. Johnston*, 53 N.C. App. 97, 280 S.E. 2d 1 (1981). The Buies commenced contempt proceedings when Johnston failed to comply with the injunction. Johnston responded that he had abandoned his plan to build a second residence and intended instead to use the foundation for a garage, in conformity with the restrictive covenants. Johnston submitted architectural plans and specifications for the garage with his response. He claimed that enforcement of the injunction would no longer be equitable, and moved for relief under N.C. Gen. Stat. § 1A-1, Rule 60 (1983). After an extensive hearing, the trial court ruled that Johnston had failed to show sufficient change of circumstances or other grounds for relief and denied his motion. Johnston appeals. We hold that the trial court erred in restricting its inquiry and in failing to exercise its equitable powers, and we reverse.

## II

Johnston seeks relief under the provisions of G.S. § 1A-1, Rule 60(b) (1983), which provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

> \*    \*    \*

> (5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

> (6) Any other reason justifying relief from the operation of the judgment.

> The motion shall be made within a reasonable time . . . . A motion under this section does not affect the finality of a judgment or suspend its operation.

These provisions are nearly identical to those of Rule 60(b) of the Federal Rules of Civil Procedure, which has been described as a

"grand reservoir of equitable power to do justice in a particular case." *Jim Walter Homes, Inc. v. Peartree*, 28 N.C. App. 709, 712, 222 S.E. 2d 706, 708 (1976); *see also Thompson v. Kerr-McGee Refining Corp.*, 660 F. 2d 1380 (10th Cir. 1981); *Compton v. Alton Steamship Co.*, 608 F. 2d 96 (4th Cir. 1979). Particularly, Rule 60(b)(6) of the Federal Rules of Civil Procedure, the residual clause, indicates that courts are no longer "hemmed in" by the "uncertain boundaries" of common law remedies in taking appropriate action to accomplish justice. *Klaprott v. United States*, 335 U.S. 601, 93 L.Ed. 266, 69 S.Ct. 384 (1949). We elect to follow the federal precedent, and we conclude (1) that the trial court had equitable power under G.S. § 1A-1, Rule 60, to grant defendant's motion, and (2) that Johnston's garage proposal complied with our decision on the earlier appeal. The questions then become, as Johnston presents them, did the trial court err (1) in limiting the evidence it considered in ruling on Johnston's motion, and (2) in declining to exercise its equitable power.

### III

We consider, first, Johnston's argument that the trial court improperly excluded certain questions regarding the Buies' alleged vengeful motive. Historically, our trial courts sat as triers of fact in equity cases (as did the trial court in the present case). Accordingly, the ordinary rules of evidence applicable to jury trials are to some extent relaxed in equity cases. *Cameron v. Cameron*, 232 N.C. 686, 61 S.E. 2d 913 (1950); 1 H. Brandis, *North Carolina Evidence* § 4a (2d rev. ed. 1982). Breadth and flexibility are inherent in equitable doctrines. *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 28 L.Ed. 2d 554, 91 S.Ct. 1267 (1971). Furthermore, the trial court has the duty to adjust and balance competing private interests and public policy considerations in deciding whether to grant equitable relief and, if so, what relief to grant. *Hecht Co. v. Bowles*, 321 U.S. 321, 88 L.Ed. 754, 64 S.Ct. 587 (1944). These considerations lead us to the conclusion that the scope of relevant evidence used to determine whether the circumstances warrant equitable relief is broad indeed. *See* N.C. Gen. Stat. § 8C-1, Rule 401 (Supp. 1983) (broad definition of relevance under new North Carolina Rules of Evidence).

The Buies argue, as they did successfully in the trial court, that the equity court's inquiry must be strictly limited, relying on

*United States v. Swift & Co.*, 286 U.S. 106, 76 L.Ed. 999, 52 S.Ct. 460 (1932). We note that *Swift* was decided *before* the adoption of Rule 60(b) of the Federal Rules of Civil Procedure, and the *Klaprott* decision. In any event, it simply limits inquiry to *changes in circumstances*, but does not limit the *types* of changes in circumstances (such as motive), which are relevant and may be inquired into. Consequently, the trial court should have allowed the questions relating to the Buies' alleged motive.

The Buies further argue that Johnston's assignment of error is, at best, inartfully preserved. However, the significance of the evidence is obvious from the record, and we hold that the objection is properly before us. *See Currence v. Hardin*, 296 N.C. 95, 249 S.E. 2d 387 (1978), *relying on Armour and Co. v. Nard*, 463 F. 2d 8 (8th Cir. 1972). The questions themselves appear in the record, along with extensive argument, and their import is obvious. The Buies have offered no evidence to show any substantial motive for their tenacious insistence on the literal terms of the mandatory injunction, despite Johnston's effort to use his existing structure in compliance with the restrictive covenants. The trial court's ruling thus prejudicially kept out evidence favorable to Johnston which the Buies apparently could not contradict. Significantly, the Buies concede that Johnston could tear down the existing foundation and in its place build the garage he now proposes to build on the existing foundation without violating the restrictive covenant.

## IV

Relying again on *Swift*, the Buies urge that we should, nevertheless, affirm since Johnston has not shown that the dangers which prompted the mandatory injunction, "once substantial, have become attenuated to a shadow," nor that enforcement of the injunction will subject Johnston to "hardship so extreme and unexpected as to justify us in saying that [he is] the [victim] of oppression." 289 U.S. at 119, 76 L.Ed. at 1008, 52 S.Ct. at 464. Johnston's new plan to use the foundation for a garage is the only change revealed by his evidence. He has invested some $8,000 in the existing structure and could remove it entirely at a cost of some $2,000. On the other hand, Johnston's evidence indicates that, by investing an additional $8,000 in the construction of the garage, Johnston would increase the value of his property from

$60,000 to $80,000, in addition to avoiding an economic loss of about $10,000, a net economic improvement. As the trial court found, this difference represents only an economic loss to Johnston and would probably not, in and of itself, justify modification of the injunction under the strict rule in *Swift*.

*Swift* dealt with oppressive and potentially criminal conspiracies in violation of the Sherman Act. Federal courts have subsequently questioned the wisdom of its literal application, particularly in the more routine case in which injunction has issued against activity less threatening to the welfare of society. *See United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 20 L.Ed. 2d 562, 88 S.Ct. 1496 (1968) (*Swift* must be read in light of its facts); *King-Seeley Thermos Co. v. Aladdin Industries, Inc.*, 418 F. 2d 31 (2d Cir. 1969) (*Swift* rule too severe in average case); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2961, at 601-4 (1973).

The purpose of the original injunction obviously must guide the trial court in ruling on any request for modification. In *Swift*, the injunction restrained the activity of major corporations which had attempted (and still possessed the necessary equipment and distributive systems) to control the national grocery market. These operative facts had not changed when the corporations requested relief. Therefore, the insistence of the *Swift* Court on a showing of "grievous injury" is understandable.

When the operative facts *have* changed, however, such that continued enforcement of the injunction would work a wrong, the federal courts have been more liberal. In *System Federation No. 91 v. Wright*, 364 U.S. 642, 5 L.Ed. 2d 349, 81 S.Ct. 368 (1961), the Supreme Court held that the district court abused its discretion in denying a request for modification to allow union shops under a consent decree, when, since the signing of the consent decree, Congress had enacted legislation allowing union shops. And in *Flavor Corp. v. Kemin Industries, Inc.*, 503 F. 2d 729 (8th Cir. 1974), the court approved an order "clarifying" an injunction, which allowed an advertiser to participate in national campaigns otherwise limited by the injunction, under certain prophylactic conditions subsequently proposed by the advertiser.

In this case the purpose of the injunction was clearly to ensure compliance with the intent of the restrictive covenants.

While it is clear that the Buies would have suffered some harm without the injunction, it obviously does not approach in any way the harm to society of the activity enjoined in *Swift*. We ordered removal of the foundation on the earlier appeal because "[t]he restrictive covenants are intended to preserve the value and character of the subdivision; and a useless, incomplete residential structure would be at least as detrimental to property values and the character of the neighborhood as a completed one." *Buie v. Johnston*, 53 N.C. App. at 101, 280 S.E. 2d at 3. At that time, Johnston intended to construct a second residence, clearly barred by the covenants. Since then, however, he has changed his plans, and introduced substantial evidence of his present plan to construct a garage, clearly allowed by the covenants. The foundation no longer represents "a useless, incomplete residential structure," but a useful, when completed, garage. Again, since the Buies have no objection to Johnston's building a garage from "scratch," Johnston should not be prohibited from building a garage from the existing foundation.

The operative facts on which the original injunction depends have thus changed. As a result, and in light of the vast difference between the threat in *Swift* and the threat in this case, we hold that the trial court erroneously limited its wide equitable discretion by relying on *Swift*.

V

The trial court further erroneously limited its discretion by relying on *Ingle v. Stubbins*, 240 N.C. 382, 82 S.E. 2d 388 (1954), and by ruling that *Ingle* controlled. It is true that we relied on *Ingle* in the earlier appeal, but the circumstances have changed since our earlier opinion. In *Ingle*, defendant built a house too close to the front line of his property, in knowing violation of an express provision of a restrictive covenant. Our Supreme Court held that a mandatory injunction was appropriate for removal of the structure: obviously defendant could not comply with the setback limits by changing the nature of the structure. However, that logic does not apply here.

The *Ingle* Court further held that defendant should be enjoined from further construction, since the covenants also allowed only a single residence on each lot and the new building was a third residence on defendant's two lots. Like the covenants in this

case, however, the covenants in *Ingle* allowed construction of garages in addition to homes. In contrast to the present case, defendant in *Ingle* did not propose to convert his existing foundation to a garage, and the Supreme Court expressed no opinion as to the possible result under such circumstances. Therefore, *Ingle* does not *compel* the result reached in the trial court.

To the contrary, *Ingle* and the general rules of restrictive covenants it applied require reversal in the case *sub judice*. The *Ingle* Court stated:

> [I]t is to be noted that we adhere to the rule that since these restrictive servitudes are in derogation of the free and unfettered use of land, covenants and agreements imposing them *are to be strictly construed against limitations on use. . . .* Therefore, restrictive covenants clearly expressed may not be enlarged by implication or extended by construction. They must be given effect and enforced as written. [Emphasis added.]

240 N.C. at 388-89, 82 S.E. 2d at 394 (quoting *Callaham v. Arenson*, 239 N.C. 619, 625, 80 S.E. 2d 619, 624 (1954)). The Supreme Court has recently reaffirmed this rule in *J. T. Hobby & Son, Inc. v. Family Homes of Wake County, Inc.*, 302 N.C. 64, 274 S.E. 2d 174 (1981), as has this Court in *Knox v. Scott*, 62 N.C. App. 732, 303 S.E. 2d 422 (1983). The restrictive covenants at issue clearly permit construction of a garage, and Johnston, in the exercise of his freedom to use his land within the bounds of the restrictive covenants, has a perfect right to construct one. We will not require him to remove a serviceable foundation in slavish obedience to the wording of an injunction, since its purpose can be accomplished by more economic, less destructive means.

## VI

Our ruling is consistent with the decisions of other jurisdictions. Courts of equity have consistently refused to order removal of structures when the owner had a right to rebuild on the same spot for a different use. In the leading case of *Kajowski v. Null*, 405 Pa. 589, 177 A. 2d 101 (1962), defendants built and operated a machine shop in knowing violation of a restrictive covenant. Plaintiffs sued and obtained a mandatory injunction ordering removal of the machine shop. On appeal, the Supreme Court of Penn-

sylvania refused to uphold the removal of the building, although it allowed a continuing injunction against its use as a machine shop. The *Kajowski* Court, in language equally applicable here, held:

> This is one of those rare cases where both sides will win, but at the same time, necessarily both will lose something. For the [defendants] to expect to continue operating a machine shop in the face of the specific prohibition in their deed against machine shops is excessive expectation. For the [plaintiffs] to expect the demolition of an excellent, useful, good-looking building in the face of the money invested and the labor expended, is also excessive expectation where the building can be devoted to uses consistent with the restrictive covenant.

405 Pa. at 592-93, 177 A. 2d at 103. The *Kajowski* Court rejected plaintiffs' contention that defendants must tear the building down for proceeding in the face of warnings of suit:

> A court of equity is a tribunal where revenge or punishment in the way of reprisal has no place. A court is not a feuding arena where the Capulets and Montagues lunge with legal swords at one another. Justice repels, reason abhors, logic condemns and fundamental equity principles reject that a new building should be destroyed when its demolition accomplishes no more than satisfy one of the parties that he had correctly foretold the state of the legal weather. In the case of *Haig Corporation v. Thomas S. Gassner Co.*, 163 Pa. Super. 611, 614, 63 A. 2d 433, 434 [(1949)], the Court very properly said that '* * * acts which, though irregular and unauthorized, can have no injurious result, constitute no ground for relief.'

405 Pa. at 595-96, 177 A. 2d at 104. We find the reasoning in *Kajowski* persuasive. *See also Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1856) (dissolving injunction to remove bridge where subsequently declared by Congress not to be obstruction); *Riverbank Improvement Co. v. Bancroft*, 209 Mass. 217, 95 N.E. 216 (1911) (no point in ordering destruction where defendants could simply erect duplicate structure; instead enjoin prohibited activity). We conclude that the destruction of Johnston's existing foundation would be a pointless

waste and inconsistent with established equitable principles. The true purpose of the covenant, the restriction of residential density, can be accomplished without destruction by a continuing injunction against prohibited uses of the structure.

## VII

To summarize, we hold that the trial court erroneously excluded evidence of the Buies' motives and erroneously limited its equitable discretion. The order denying Johnston's motion is therefore reversed, and the cause remanded for entry of an order allowing the motion.

Reversed and remanded.

Judges WEBB and EAGLES concur.