THOMAS ALLEN, trustee, & others *vs.* CHARLES L. BARRETT
& another.

Worcester.    October 1, 1912. — October 15, 1912.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & DECOURCY, JJ.

*Equitable Restrictions. Equity Jurisdiction,* To restrain violation of equitable restrictions, Laches, Mandatory injunction. *Equity Pleading and Practice,* Parties.

The owner of a tract of twenty acres of land in a city laid it out as a residential section and expended large sums of money in developing it. All deeds of lots from the tract contained similar conditions and restrictions as to the kind, cost, use and position of buildings to be erected thereon. At the time when the owner purchased the tract there stood on one lot a two family house, and he conveyed that lot and the one adjoining it by a deed containing the following restrictions: "On neither lot . . . shall there be built or maintained more than one dwelling house, nor a dwelling house costing less than . . . (except that the present house now standing may be maintained there as the sole house on its lot), nor shall such building be constructed or maintained other than for a single family or as a double, otherwise called a semi-detached house." A successor in title to the grantee began to alter the building into a three-story tenement house, and the original owner, who still owned lots in the tract, sought by a suit in equity to restrain him from doing so. *Held,* that the suit might be

maintained, since the restrictions prohibited the construction and maintenance of a three-story tenement house, regardless of the extent to which the old building entered into its construction.

Where the owner of a large tract of land from which he had conveyed several lots subject to valid building restrictions first learned of certain building operations by the owner of one of the lots which were in violation of the restrictions and which had been carried on for about six weeks in such a way that the owner of the large tract did not have any actual knowledge of the intent of the violator of the restrictions, and where the owner of the large tract a few days after his discovery communicated with the person violating the restrictions and, the building operations being stopped, began a suit in equity to enjoin the operations about two months later, a finding that the plaintiff was not guilty of laches is warranted.

Where the owner of a large tract of land in a city, in furtherance of and as a part of a general scheme for the development of the tract as a residential district, in all deeds of lots therefrom included restrictions of a similar, although not of precisely an identical, character, which were imposed for the benefit of all the lots in the tract, several of the grantees of such lots may join as plaintiffs in a suit in equity to restrain a successor of a grantee of one of the lots from violating the restrictions contained in the deed to his predecessor in title.

A mandatory injunction may be issued compelling the removal of structures erected upon land in violation of building restrictions to which the land was subject, although the defendant had received the land by descent and at the time that he erected the structures in question he was not aware of the restrictions which were in the deed to his ancestor.

BILL IN EQUITY, filed in the Superior Court on February 13, 1912, seeking to restrain the violation of certain building restrictions, as stated in the opinion.

The suit was heard by *Hardy*, J., who filed a memorandum of his findings, which, besides the facts stated in the opinion, contained the following findings on the questions of laches and the form of the decree:

"The work done by the defendants in connection with such changes was begun on November 2, and continued until December 16, 1911, and in such a way that the plaintiffs did not have such actual knowledge of the intent of the defendants that I can find that they were guilty of laches. I am satisfied that the principal agent of the trustees did not have such knowledge of the proposed changes of premises at a time exceeding ten days before the defendants were notified of the existence of the restriction.

"Although I find that the defendants have incurred an expense in connection with such work to the amount of about $1,475.00, I am satisfied that, under a reasonable discretion to be exercised by the court, the prayer for relief should be granted."

It appeared that the plaintiff Allen, trustee, still owned lots in the tract at the time the suit was begun, and that the defendants received the land by descent from their father, to whom it had been conveyed as stated in the opinion.

A decree was made restraining the defendants from proceeding further with the alteration of the house, and directing them within thirty days either to remove the portions of the building which were in violation of the restrictions referred to in the bill of complaint and to restore the building to a dwelling house for the use of one family, or at the option of the defendants to remove the building altogether from the premises. The defendants appealed.

The record contained a report of the evidence.

*A. S. Houghton,* for the defendants.

*C. F. Aldrich,* for the plaintiffs.

DeCourcy, J. The judge who saw the witnesses and heard the testimony made certain findings of fact as a basis for the decree, and these must stand unless they are clearly erroneous. In our opinion they are amply sustained by the reported evidence.

The plaintiff Allen, as trustee for himself and other beneficiaries, owned a tract of about twenty acres in the city of Worcester, and laid it out as a residential section known as Montvale. Sixty-five thousand dollars were expended in constructing streets, sewers, granolithic walks and other improvements, and in planting shade trees; and in all the deeds of lots sold there were inserted conditions and restrictions as to the kind, cost and use of the buildings to be erected, and their distance from the street line.

In August, 1900, the plaintiff Allen, trustee, conveyed to one Jesse P. Taber lots 76 and 77 on the Montvale plan. On lot 76 was a house that was on the "Warren purchase" when the trustee bought that and the "Whitman tract," from which to develop Montvale. This house had been a two-family building, but Taber changed it over into a one-family residence and occupied it as such. In his deed was the following provision: "Said tract is conveyed subject forever to the following conditions and restrictions. 1st. On neither lot 76 or 77 shall there be built or maintained more than one dwelling house, nor a dwelling house costing less than thirty-five hundred ($3,500) dollars (except that the present house now standing may be maintained there as the sole house on its lot), nor shall such building be constructed or

maintained other than for a single family or as a double, otherwise called a semi-detached house." In December, 1905, the defendants' ancestor obtained title by deed to lots 76 and 77, "subject to restrictions mentioned in deed from Thomas Allen, trustee, to Jesse P. Taber." The defendants were altering the house on lot 76 into a three-story tenement house known as a "three decker" when the plaintiffs protested and brought this bill in equity.

There is no merit in the contention of the defendants that the specific and limited exception in the deed to Taber, permitting the maintenance on lot 76 of the existing building, exempts that building from all restrictions; and we are of opinion that the restrictions considered as a whole prohibit the construction and maintenance on the lot of a "three decker" tenement house, regardless of the extent to which the old building may enter into its construction. Accordingly the decree in favor of the plaintiff Allen was warranted unless he was guilty of laches; and the evidence sustains the judge's finding that he was not. He first heard of the alterations from Herbert A. Pratt, one of the beneficiaries of the trust; and Pratt testified that he first heard of them on Wednesday, December 14; that on the next Saturday he notified one Lassalle, who was working on the house, and on the Monday following went over the matter with the defendant, Charles L. Barrett. *Stewart* v. *Finkelstone*, 206 Mass. 28.

As to the other plaintiffs it is enough to say that the evidence warrants the findings of the trial judge, in effect that they were owners of other lots on the Montvale plan, that the restrictions in their deeds from the trustee were similar to those in the Taber deed, and were imposed as part of a general plan for the benefit of the several lots; that they had bought the land and erected residences thereon in compliance therewith; and that they were not guilty of laches. Under such facts the restrictions give to each grantee a right in the nature of an easement which will be enforced in equity against the grantee of another of the lots, although there is no direct contractual relation between the two grantees. And the fact that the restrictions are not exactly the same in all the deeds does not tend to show that the restriction in question was not intended to apply alike to all. *Hano* v. *Bigelow*, 155 Mass. 341. *Bacon* v. *Sandberg*, 179 Mass. 396. *Evans* v.

*Foss,* 194 Mass. 513.   *Sayles* v. *Hall,* 210 Mass. 281; 14 Ann. Cas. 1021, note.

It is urged by the defendants that the decree for a mandatory injunction should not issue, because they were not aware of the restrictions in the deed to their father, under which they claim. But as they saw fit to act in ignorance of their own rights, and without considering the rights and interests of the residents of this neighborhood, the financial loss should be borne by them and not by the plaintiffs, who are in no way responsible for it. The relief granted is such as is usual in similar cases. *Kershishian* v. *Johnson,* 210 Mass. 135, and cases cited.

<div align="right">

*Decree affirmed with costs.*