(118 So. 658)

**SCHEUER v. BRITT.**  (3 Div. 842.)

Supreme Court of Alabama.   June 28, 1928.

As Modified on Denial of Rehearing, Oct. 25, 1928.

S. H. Dent, of Montgomery, for appellant.

Horace Strongfellow and Jack Thorington, both of Montgomery, for appellee.

BROWN, J.   A decree of the circuit court sustaining the defendant's demurrer to the bill as first amended was affirmed on a former appeal.   Scheuer v. Britt, 217 Ala. 196, 115 So. 237.

Thereafter, by leave of the trial court, the complainant amended her bill as theretofore amended, and the demurrers interposed thereto were sustained, and this appeal is from that decree.

The bill as now amended avers, in short:

That Mamie D. Jones, who was then the owner of the tract of land constituting South Cloverdale, laid out and platted said tract in lots, blocks, and streets, "to be sold solely for residential purposes; that an auction sale was held on the premises, at which sale it was publicly announced that all lots sold were to be for residential purposes only." That the advertising published in the Montgomery Advertiser prior to such auction sale

also contained a notice that they were to be sold for residential purposes only.

That said Mamie D. Jones laid off the subdivision described in the bill for sale of lots for residential purposes only, and Brown, Duskin & Heilpern were interested jointly with Mrs. Jones and assisted her in putting the property on the market, and in disposing of the lots in said subdivision, in consideration of which they received a deed from her to the east half of said subdivision.

On May 1, 1923, Brown, Duskin & Heilpern sold and conveyed to complainant the lots numbered 3 and 4 in block No. 2, according to the map of South Cloverdale, plat No. 1, as recorded in Plat Book 4, page 71, in the office of the judge of probate of Montgomery county, Ala.; the deed executed to complainant containing the following restrictive covenant:

"It is understood and agreed that no house is to be erected to cost less than five thousand ($5,000.00) dollars, with the exception of garage, barn or servant's house built in connection with main dwelling. That only one residence is to be erected on one lot. No buildings to be nearer than fifty feet from the street. *All lots sold for residential purposes only,* and no advertising signboards shall be erected. No lots can be resold or transferred to negroes. The garage and other buildings, other than main residence, on corner lots, are to be set back on building line of residence in the rear."

On May 26, 1923, said Brown, Duskin & Heilpern sold and conveyed to the respondent lots 1 and 2, block No. 1, according to the map of said subdivision, located immediately across the street from the complainant's lots; the deed to respondent embodying the following restrictive covenant:

"It is understood that no main residence is to be built on either of said lots to cost less than $5,000.00. This does not refer to servant houses, garages, barns, or other outbuildings to be used in connection with said main residence."

That the same restrictive covenant embodied in complainant's deed was embodied in the deeds to substantially all other parties who purchased lots in said plat at said auction sale, or subsequent thereto, and that the deeds to substantially all of the lots sold by Brown, Duskin & Heilpern in said east half of said subdivision contained the same restrictive covenant as contained in complainant's deed, except the deed to respondent.

That subsequent to the conveyances to complainant and respondent, Brown, Duskin & Heilpern reconveyed to Mrs. Jones the said east half of the subdivision, excepting certain designated lots. That the deed reconveying the property to Mrs. Jones did not contain the restrictive covenant.

That Brown, Duskin & Heilpern, when they received the conveyance from Mrs. Jones to the east half of the subdivision, had knowledge that said property had been laid out and platted as a residence district, and

that the respondent, when he purchased had notice of this fact.

That at the time of filing the bill the respondent Britt was beginning the erection of storehouses and filling stations on his said lot, after he had applied to complainant for her consent to do so, and she had refused such consent.

On the former appeal it was held that—

"Where a defined district is platted and publicly offered as a restricted district, the restrictive clauses in the several deeds are construed as mutual covenants, each lot subject to a servitude or easement in favor of all the others, *including unsold lots of the grantor in the same plat.* Such servitude being appurtenant to and running with the land, any subsequent purchaser of a lot within the plat, with notice of the easement thereon, takes it subject thereto, as between himself and other lot owners, although no restriction is incorporated in his deed." Scheuer v. Britt, supra; Allen v. Barrett, 213 Mass. 36, 99 N. E. 575, Ann. Cas. 1913E, 820; Leader v. La Flamme, 111 Me. 242, 88 A. 859; Bacon v. Sandberg, 179 Mass. 396, 60 N. E. 936.

Thompson, in his work on Real Property, states the rule to be that—

"Where the owner of a tract of land adopts a general scheme for its improvement, dividing it into lots, and conveying these with uniform restrictions as to the purposes for which the lands may be used, such restrictions create equitable easements in favor of the owners of the several lots, which may be enforced in equity by any one of such owners. Such restrictions are not for the benefit of the grantor only, but for the benefit of all purchasers. The owner of each lot has as appurtenant to his lot a right in the nature of an easement upon the other lots, which he may enforce in equity.

"Whether such restriction creates a right which inures to the benefit of purchasers is a question of intention, and to create such right it must appear from the terms of the grant, *or from the surrounding circumstances,* that the grantor intended to create an easement in favor of the purchaser." 4 Thompson on Real Property, § 3398.

This doctrine is sustained by the great weight of authority, a compilation of which may be found in the extensive notes in 21 A. L. R. pages 1300–1326; 33 A. L. R. 676, 678; 8 R. C. L. 1117, § 178.

In such cases the equitable right to enforce such mutual covenants is rested on the fact that the building scheme forms an inducement to buy, and becomes a part of the consideration. The buyer submits to a burden upon his lot because of the fact that a like burden is imposed on his neighbor's lot, operating to the benefit of both, and carries a mutual burden resting on the seller and the purchasers. Tallmadge v. East River Bank, 26 N. Y. 105; Sanford v. Keer, 80 N. J. Eq. 240, 83 A. 225, 40 L. R. A. (N. S.) 1090.

In Morris & Morris v. Tuskaloosa Mfg. Co., 83 Ala. 565, 574, 3 So. 689, 692, the following text from Pomeroy's Eq. Juris. vol. 3, 1342,

272

that "restrictive covenants in deeds, leases and agreements, limiting the use of land in a specified manner, or prescribing a particular use, which create equitable servitudes on the land, will be specifically enforced in equity by means of an injunction, not only between the immediate parties, but also against subsequent purchasers with notice, even when the covenants are not of the kind which technically run with the land," was quoted with approval and applied in that case.

█ Appellee's contention now is that to bring the case within the influence of the general scheme or doctrine, adverted to in the opinion of the court on the first appeal it must be shown that such scheme of improvement was definitely adopted *and fully executed by embodying the restrictive covenant in each and all of the conveyances;* that such definite scheme is conclusively negatived, by the fact that Mrs. Jones conveyed the east half of the platted property to Brown, Duskin & Heilpern without restrictive covenants, and they conveyed to the defendant without embodying in the deed such covenant, and afterwards reconveyed to Mrs. Jones a large portion of the same property, omitting the covenant from such deed.

This contention is not only in conflict with the doctrine stated on the former appeal, but is not sustained by the authorities cited by appellee. In Donahoe v. Turner, 204 Mass. 274, 90 N. E. 549, it was held that, where the original proprietor of a tract of land made a conveyance of portions of it subject to certain restrictions, but also conveyed large portions of it free from any restrictions whatever, the facts do not warrant a finding that a general scheme founded on such restrictions was adopted for the entire tract. In reaching this conclusion on the question of fact, the execution of the deeds to the larger portions of the tract without covenants was given necessary force, negativing the existence of such general scheme, when considered in connection with their location and relative size as compared with the whole tract and the lots previously conveyed.

Among the cases referred to by appellee are: Jackson v. Stevenson, 156 Mass. 496, 31 N. E. 691, 32 Am. Rep. 476, which holds that—

"When restrictions inserted in the deed of a particular lot are part of a general scheme for the benefit and improvement of all the lands included in a larger tract, a grantee of any part of the land may, under proper circumstances, enforce them against his neighbor."

See, also, Hano v. Bigelow, 155 Mass. 341, 29 N. E. 628; Hopkins v. Smith, 162 Mass. 444, 38 N. E. 1122.

In MacKenzie v. Childers, L. R. 43 Ch. Div. (Eng.) 265, it was said:

"The question in this case is simply whether the vendors of land laid out upon a building scheme have covenanted or agreed, expressly or by implication, with the plaintiffs, who are purchasers of a part of the land under that scheme, not to authorize other purchasers to use the rest of the land in violation of the building scheme. If they have so contracted, either by negative words or by affirmative words which imply a negative, there is no doubt that the court would restrain them from breaking such contract."

And in Tucker v. Vowles, [1893] 1 Ch. 195, 62 L. J. Ch. (N. S.) 172, 3 Reports, 107, 41 Week. Rep. 156, it was held:

"It is not enough that the vendor contemplated selling an estate in building lots * * * and that as to many of the lots there should be *more or less restrictive covenants, probably in many cases like the covenant sought to be enforced.*"

The averments of the bill that such general scheme was inaugurated in respect to South Cloverdale subdivision, and that lots were sold and conveyed in accordance therewith, present a question of facts, to be established by evidence, not wholly parol. Scheuer v. Britt, supra.

The restrictive covenant in the deed to complainant and others, that "all lots sold for residential purposes only," is some evidence, in fact strong evidence, if not conclusive, that such general scheme was inaugurated with reference to the subdivision. Harvey v. Rubin, 219 Mich. 307, 189 N. W. 17.

If such general scheme was inaugurated and lots sold thereunder, with a view of establishing the district as a strictly residential district, it is certain that it was not within the power of the parties who inaugurated and established the scheme and sold lots on the faith that such scheme had been established, to defeat its purpose, to the detriment of those who have purchased on the faith that such residential district was established. Duester v. Alvin, 74 Or. 544, 145 P. 660; Weigman v. Kusel, 270 Ill. 520, 110 N. E. 884.

If the promoters can destroy the general scheme after it has been established by making conveyances inter se, or by conveying to others who have notice that a residential district was contemplated and established, so as to authorize buildings for commercial purpose, then they may convert the district into a negro settlement in violation of the restriction that this shall not be done, rendering the property of complainant and other such holders less valuable and less desirable for residential purposes.

The foregoing will indicate that we are of opinion that the bill has equity, and was not subject to the stated grounds of demurrer. The decree of the circuit court, in equity, is therefore reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.

## On Rehearing.

BROWN, J. The appellee insists that the foregoing opinion is in conflict with the holding on the former appeal, and is not supported by the authorities which it cites.

To restate the doctrine announced on the former appeal (217 Ala. 196, 115 So. 237):

"Where a defined district is platted and publicly offered as a restricted district, the restrictive clauses in the several deeds are construed as mutual covenants, each lot subject to a servitude or easement in favor of all the others, *including unsold lots of the grantor in the same plat.* Such servitude being appurtenant to and running with the land, *any subsequent purchaser of the lot within the plat,* with notice of the easement thereon, takes it subject thereto, as between himself and other lot owners, *although no restriction is incorporated in his deed.*" (Italics supplied.)

Taking the averments of the bill as true, Mamie D. Jones and Brown, Duskin & Heilpern, in putting the subdivision of South Cloverdale on the market as a restricted residence district, excluding commercial enterprises and limiting sales to white people, were engaged in a joint enterprise. Mrs. Jones conveyed to Brown, Duskin & Heilpern the south half of the subdivision for their assistance in promoting this general scheme, and thereafter Brown, Duskin & Heilpern conveyed to the complainant the property she now owns, located in that part of the subdivision conveyed to them by Mrs. Jones, with the restrictive clause in her deed, and subsequently sold and conveyed to the defendant the property which he now owns, not without restrictions, but embodied in his deed the following restrictions:

"It is understood that no main residence is to be built on either of said lots to cost less than $5,000. This does not refer to servant houses, garages, barns, or other outbuildings used in connection with said main residence."

And he took with notice that his property was within the district put on the market as a strictly residence district. ■ Under the stated doctrine, when Brown, Duskin & Heilpern sold and conveyed to complainant, they laid on each and every lot then owned by them in said subdivision, including the lots afterwards sold to the defendant, the same restriction as to the use of the property embodied in complainant's deed; and the restrictive covenant embodied in defendant's deed, when construed in the light of the circumstances averred in the bill, limits the use of his property to use as residence property. McGhee et al. v. Alexander et al., 104 Ala. 116, 16 So. 148.

This brings the case squarely within the doctrine announced in Allen v. Barrett, 213 Mass. 36, 99 N. E. 575, Ann. Cas. 1913E, 820, where it was said:

"As to the other plaintiffs it is enough to say that the evidence warrants the findings of the

trial judge, in effect that they were owners of other lots on the Montvale plan; that the restrictions in their deeds from the trustee were similar to those in the Taber deed, and were imposed as part of a general plan for the benefit of the several lots; that they had bought the land and erected residences thereon in compliance therewith; and that they were not guilty of laches. Under such facts the restrictions give to each grantee a right in the nature of an easement which will be enforced in equity against the grantee of another of the lots, although there is no direct contractual relation between the two grantees. And the fact that the restrictions are not exactly the same in all the deeds does not tend to show that the restriction in question was not intended to apply alike to all"—citing Hano v. Bigelow, 155 Mass. 341, 29 N. E. 628; Bacon v. Sandberg, 129 Mass. 396; Evans v. Foss, 194 Mass. 513, 80 N. E. 587, 9 L. R. A. (N. S.) 1039, 11 Ann. Cas. 171; Sayles v. Hall, 210 Mass. 281, 96 N. E. 712, 41 L. R. A. (N. S.) 625, Ann. Cas. 1912D, 475; 14 Ann. Cas. 1021, note.

■ Nor is it necessary that the restrictive covenant running with the land should be incorporated in the defendant's deed to take out of the influence of the statute of frauds; the servitude may be laid on the property by a separate writing, to which he is not a party, if he is in privity with and claiming under one of the parties thereto, and has notice thereof. Webb v. Robbins, 77 Ala. 176; Noojin v. Cason, 124 Ala. 458, 27 So. 490; Gilmer v. M. & M. Ry. Co., 79 Ala. 569, 58 Am. Rep. 623; Ladd v. Boston, 151 Mass. 585, 24 N. E. 858, 21 Am. St. Rep. 481.

Here the servitude was laid on the property by the conveyance made by Brown, Duskin & Heilpern to complainant in pursuance of the general scheme of improvement, affecting not only the lots conveyed to complainant, but unsold lots then held by complainant's grantors, including the lots afterwards sold to the defendant. Scheuer v. Britt, 217 Ala. 196, 115 So. 237.

■ This doctrine is neither strange nor anomalous, as appears from the numerous authorities collected in the note to 21 A. L. R. pages 1300–1326, and finds a striking analogy in the doctrine, often recognized by the court, that where the owner of land lays it off in lots, blocks, and streets, as a subdivision, and the sale of lots is made in reference thereto, and purchases are made on the faith of the act, this operates as a dedication of the street and gives the several lot owners an easement thereon, and this is so without reference to the statute, City of Demopolis v. Webb, 87 Ala. 659, 6 So. 408; Weiss et al. v. Taylor et al., 144 Ala. 440, 39 So. 519; Ft. Payne Co. v. City of Ft. Payne, 216 Ala. 679, 114 So. 63.

On the other hand, it would be strange indeed to hold that one may lay off a subdivision for strictly residential purposes, as a general scheme of improvement, and sell and convey to numerous purchasers on the faith thereof, incorporating in their deeds re-

274

strictive covenants as to the use in pursuance of such scheme, that the promoters of the general scheme could destroy the scheme, to the detriment of such purchasers, by selling to others without such restrictions, when they had notice of such general scheme.

On the former appeal, as appears from the opinion, there were "no averment of any restriction upon the use of lots within the area incorporated in the deed of this complainant, nor in any of the deeds to lots sold at public auction or thereafter, nor that such restriction appeared on the recorded plat and was thus incorporated by reference into such deeds," and what was there said as to the statute of frauds was applicable to the case as then presented. These defects have been cured by the amendments to the bill, presenting the case in a different light, and the case as now presented by the averments of the bill is governed by the rules of law stated above.

Application overruled.

All the Justices concur.