STUART, Justice.
Richard Tucker, William R. Kruse, and Henry H. Scheuer, all property owners in an area of Madison County referred to as Beasley Spring Acres (hereinafter referred to collectively as “the property owners”), sued Hun Es Tu Malade? #16, LLC, David J. Slyman, Jr., and Todd J. Slyman.[1] Hun Es Tu Malade and the Slymans each own a parcel of land in the same area as the property owners.
In this action, the property owners sought to enjoin Hun Es Tu Malade and the Slymans from developing their two parcels for commercial purposes, more specifically, to enjoin them from constructing a “CVS Pharmacy” discount drugstore on their property (the two parcels of land owned by Hun Es Tu Malade and the Slymans are hereinafter referred to as “the CVS property”). The property owners also sought to reform the deeds to the two parcels making up the CVS property. In support of their action, the property owners asserted that the chains of title to the parcel owned by Hun Es Tu Malade and to the parcel owned by the Slymans contained restrictive covenants prohibiting commercial use of the property and prohibiting further subdivision of that property-
The trial court entered a summary judgment in favor of the property owners, declaring that the two parcels owned by Hun Es Tu Malade and the Slymans were subject to the restrictive covenants found in their respective chains of title. The trial court also declared that Beasley Spring Acres, which had been developed by Clarence Beasley, a common grantor, had been developed pursuant to a common scheme. For these reasons, the trial court permanently enjoined Hun Es Tu Malade from developing its property for commercial purposes and ordered the deeds to the CVS property reformed to grant Hun Es Tu Malade, David J. Slyman, Jr., and Todd J. Slyman an undivided interest in each of the two parcels making up the CVS property, which the trial court held had been improperly subdivided.
In case no. 1051148, Hun Es Tu Malade appeals, and we affirm. In case no. 1051222, the Slymans appeal, and we affirm.
I. Background
A. The Area
The disputed property — the CVS property — is included in 160 acres of land located in Madison County, all 160 acres of which were at one time owned by an individual named Clarence Beasley.[2] The property owners asserted that, beginning in 1955 and continuing for nearly 30 years, Clarence Beasley and his wife, Mildred Beasley, conveyed 90 separate parcels from these 160 acres.[3] The property own *58 ers assert that the Beasleys made the vast majority of these conveyances subject to restrictive covenants; these restrictive covenants limited, among other things, the grantee’s use of the parcel and the grantee’s right to subdivide the parcel. The record contains copies of numerous deeds from the Beasleys to the original grantees.[4]
In the vast majority of these deeds, the grantees were restricted from using their property for commercial purposes. Also in the vast majority of these deeds, the grantees were prohibited from further subdividing their property. However, the phrasing of the restriction against further subdivision varied from deed to deed. In some of the deeds, the grantee was prohibited from any further subdivision of the lot. In some other deeds, the grantee was prohibited from subdividing the lot into parcels smaller than a size specified in the deed (the specified size varied between 1.4 and 4.0 acres). Still other deeds contained no restrictions on subdividing the lots.
B. The CVS Property
This dispute specifically centers on two parcels located at the corner of Providence Main Road and U.S. Highway 72 in Madison County. In 1956, both parcels were part of the 160 acres owned by Clarence Beasley. On May 8, 1956, Beasley conveyed one of the parcels to Millenia McLe-more. That conveyance was made subject to the following restrictions:
“[T]his conveyance being subject, however, to the following restrictive covenants which are to run with said lands, to-wit:
“1. That said lot or tract is to be used for private residential purposes only, with no buildings to be erected, altered or permitted to remain on said premises for residence purposes other than detached single family dwelling houses;
“2. That no residence or dwelling house costing less than $10,000.00, exclusive of outbuildings, is to be constructed on said lot;
“1. That said lot is not to be subdivided for any purpose and no lot or tract of lesser size is to be sold or otherwise transferred from the lot herein conveyed.”
On that same day, Beasley conveyed the other parcel to Alfred Powers. That conveyance was made subject to the same restrictions set forth above.
Linda Harris and Barbara Deckelman later became the owners of these two parcels (hereinafter referred to as “the Harris property” and “the Deckelman property”). In December 2003, Harris, Slyman Construction Company, Inc., and Slyman Investment Group, Ltd., entered into a document entitled “Declaration of Property *59 Use and Removing Restrictions” regarding the Harris property. In this document, Harris acknowledged that she owned property fronting U.S. Highway 72, that Barbara Deckelman owned the property adjacent to Harris’s on the west side, and that Slyman Investment Group, Ltd., owned the property adjacent to Harris on the east side. Harris also acknowledged that her property was “subject to restrictions in the chain of title” but, she asserted, the restrictions had ceased to be of any value to the property, that the character of the lands surrounding the property had changed drastically since 1956, and that enforcement of the restrictive covenants would be harmful to Harris. In this document, Harris also acknowledged that she wanted to sell her property to Slyman Construction Company, Inc.
Harris, Deckelman, Slyman Construction Company, and Slyman Investment Group, Ltd., executed a document that they recorded in the Madison County Probate Court. By executing and recording this document, Harris purported to remove the deed restrictions applicable to the Harris property.
On December 12, 2003, Harris sold her property to Slyman Construction Company. Harris made this conveyance subject to all “restrictions, restrictive covenants and easements of record, if any.” In February. 2004, Slyman Construction Company conveyed by quitclaim deed the Harris property to David J. Slyman, Jr., and Todd J. Slyman, in their individual capacities.[5] In September 2004, the Slymans conveyed the Harris property to Schreiner Development, LLC, by indenture. The indenture executed by the Slymans did not reference any restrictions or restrictive covenants. On that same date, Schreiner Development conveyed the northern half of the Harris property back to the Slymans individually and conveyed the southern half of the Harris property to FHT, LLC.[6]
In July 2004, this same sequence of events occurred in connection with the property owned by Barbara Deckelman. Deckelman executed a document entitled “Declaration of Property Use and Removing Restrictions.” In this document, Deckelman acknowledged that she owned certain property fronting U.S. Highway 72, that Schreiner Development, LLC, owned property adjacent to her property on the west side, and that Slyman Construction Company, Inc., owned property (the Harris property) adjacent to Deckelman on the east side.[7] In this document, Schreiner & Schreiner Development, Inc., indicated a desire to purchase the Deckelman property and Deckelman indicated her interest in selling that property to Schreiner & Schreiner Development, Inc.[8]
Additionally, Deckelman acknowledged that her property was subject to certain restrictions but that the restrictions contained in the chain of title to her property had ceased to be of benefit or of value to *60 the property, that the character of the land had changed drastically since the restrictions were placed in the deed, and that enforcement of those restrictions would harm Deckelman. Deckelman, Schreiner Development, LLC, Schreiner & Schreiner Development, Inc., and Slyman Construction Company were the parties to this document, which was recorded in the Madison County Probate Court.[9] By executing and recording this document, Deckelman purported to remove the restrictions applicable to the Deckelman property.
On September 30, 2004, Deckelman conveyed her property to Schreiner Development, LLC. Deckelman’s conveyance of the Deckelman property to Schreiner Development, LLC, was not made subject to the restrictions or covenants of record. On that same date, September 30, 2004, Schreiner Development, LLC, conveyed title to the northern half of its lot (the Deckelman property) to the Slymans, and conveyed the southern half of that lot to FHT, LLC.
By conveying the northern half of the two lots to the Slymans and the southern half of the two lots to FHT, Schreiner Development, LLC, had subdivided the two parcels. Several months later, FHT conveyed its interest in the southern half of the Harris property and the Deckelman property to Hun Es Tu Malade.
Thus, by April 2005, Hun Es Tu Malade held title to the southern half of the Harris property and the Deckelman property and the Slymans held title to the northern half. Shortly after obtaining title to the southern half of the Harris property and the Deckelman property, Hun Es Tu Malade began construction of a CVS Pharmacy on the property.
II. The Underlying Litigation
In June 2005, the property owners sued Hun Es Tu Malade and the Slymans seeking a declaration that the CVS property remained subject to the restrictive covenants found in its chain of title, which prohibited commercial development of the property and any subdivision of the property. The property owners also asserted:
“[T]he [property owners], as residential homeowners within Beasley Spring Acres, have an interest in and directly benefit from the Deed Restrictions. The actions of the Defendants in subdividing the property and constructing a commercial building on the property has caused harm and will continue to cause harm to the [property owners] by adversely affecting the residential character of Beasley Springs Acres, lowering the value of their residential property *61 and diminishing its marketability, should the actions of the Defendants be allowed to continue.”
In addition to the declaratory judgment, the property owners sought a temporary and permanent injunction prohibiting the Slymans and Hun Es Tu Malade from developing the CVS property for commercial purposes. Finally, the property owners requested that the trial court reform the deeds that had effected the subdivision of the CVS property as necessary to bring the deeds and the property in compliance with the restrictions applicable to the property.
On or about June 21, 2005, the trial court entered a temporary restraining order, enjoining Hun Es Tu Malade from using the property in a manner or for a purpose that violated the deed restrictions, conditioned upon the property owners’ posting a $5,000 bond. The property owners posted the bond, and the trial court issued a temporary injunction. However, upon motion of Hun Es Tu Malade, the trial court later increased the amount of the required bond to $500,000, an amount the property owners did not post.[10] For that reason, the trial court vacated the temporary restraining order on June 29, 2005. Hun Es Tu Malade then resumed construction on the CVS property.
Hun Es Tu Malade answered the complaint, asserting, among other things, that no common scheme of development had ever existed and that the restrictive covenants relied on by the property owners did not run with the land. Hun Es Tu Malade also filed a counterclaim, requesting a judgment declaring that it was entitled to develop its property commercially; a judgment declaring that the restrictions applicable. to the CVS property .had been removed by agreement of the neighboring property owners; and a judgment declaring that the restrictive covenants should be removed because of the hardship they would cause or because of the change in the conditions surrounding the property. Hun Es Tu Malade also sought a reformation of its deed to remove any restrictions applicable to its property based on the changed conditions in the area. The Sly-mans. separately filed an answer to the complaint.
All parties moved for a summary judgment and submitted exhibits in support of their motions.[11] At the hearing on the *62 pending summary-judgment motions, all parties stipulated that there were no genuine issues of material fact and that the case could be decided as a matter of law. After hearing arguments, the trial court granted the property owners’ motion and entered a summary judgment for the property owners.
In its summary-judgment order, the trial court declared that the restrictive covenants included by Clarence Beasley in his original deeds and found in the chain of title to the Harris property and the Deek-elman property ran with the land and remained valid and binding. The trial court also declared that Clarence Beasley had developed his property subject to a common scheme of development. For these reasons, the trial court enjoined Hun Es Tu Malade from taking any further actions to commercially develop the CVS property. The trial court also declared that the two parcels making up the CVS property had been improperly subdivided and ordered the deeds to the parcels owned by Hun Es Tu Malade and the Slymans to be reformed to give Hun Es Tu Malade and each of the Slymans an undivided interest in each parcel.
On October 20, 2005, Hun Es Tu Malade filed an emergency motion to stay the injunction, asserting that enforcement of the trial court’s order would cause it significant damage. Hun Es Tu Malade filed
a $50,000 bond to obtain a stay of the injunction.
On or about November 15, 2005, Hun Es Tu Malade and the Slymans filed motions for reconsideration of the summary judgment. Hun Es Tu Malade submitted additional evidence in support of its motion for reconsideration, including correspondence involving settlement negotiations and offers between the parties. The property owners moved to strike much of the additional evidence submitted by Hun Es Tu Malade, and requested that the trial court impose sanctions against Hun Es Tu Ma-lade for introducing evidence of settlement negotiations, in violation of Rule 408, Ala. R. Evid.
On December 30, 2005, Hun Es Tu Ma-lade sought to supplement the evidence again. The property owners responded and submitted their own additional evidence, including affidavits. Hun Es Tu Malade then moved to strike those affidavits, claiming that those affidavits were intended to support the property owners’ summary-judgment motion and that the time for offering such evidence had passed.
On April 13, 2006, the trial court issued an order denying the motions for reconsideration filed by Hun Es Tu Malade and the Slymans. The trial court also struck any reference to the parties’ settlement negotiations and denied all parties’ requests to supplement the record.[12]
*63 On May 11, 2006, Hun Es Tu Malade appealed from the denial of its motion for reconsideration (case no. 1051148). On May 22, 2006, David Slyman and Todd Slyman appealed from that same order (case no. 1051222).[13] In case no. 1051148, Hun Es Tu Malade asserts the following arguments:
“I. The covenant is unenforceable due to lack of a dominant estate, and [the property owners] have no standing to enforce the covenant sued on.
“II. The trial court erred in granting summary judgment based on a legal theory not pled, not supported by admissible evidence, and when the only admissible evidence in the record demonstrated the absence of a neighborhood scheme. “HI. In the alternative, treating as done that which should have been done, [Hun Es Tu Malade] is entitled to summary judgment [on the basis] that Beasley did not develop his property pursuant to a neighborhood scheme.
“IV. The law does not allow judgments to be entered without regard to affirmative defenses.
‘V. The injunction is invalid for failure to specify the neighborhood subjected to the covenants.”
In case no. 1051222, the Slymans adopt all of the issues and arguments asserted by Hun Es Tu Malade in case no. 1051148.

Standard of Review

“We review the trial court’s entry of a summary judgment de novo, and our standard of review is well settled.
“ ‘In reviewing the disposition of a motion for summary judgment, “we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,” Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was “entitled to a judgment as a matter of law.” Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmov-ant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).’
“Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).”
Hollingsworth v. City of Rainbow City, 826 So.2d 787, 789 (Ala.2001).
Analysis[14]
“I. The covenant is unenforceable due to lack of a dominant estate, and [the *64 property oumers] have no standing to enforce the covenant sued on.”
Hun Es Tu Malade and the Sly-mans acknowledge that the chain of title to the CVS property contains restrictive covenants; however, they assert that because the land to be benefited by those covenants is not identified in the chain of title, the covenants were enforceable only by the grantor — Clarence Beasley. Hun Es Tu Malade and the Slymans also argue that, upon Beasley’s death or upon the conveyance of all the benefited property, the “dominant estate” ceased to exist, and the restrictive covenants applicable to the CVS property became unenforceable.
By this argument, Hun Es Tu Malade and the Slymans appear to misunderstand the nature of “reciprocal negative easements,” which the property owners claim exist in this case. A “reciprocal negative easement” is defined as
“[a]n easement created when a landowner sells part of the land and restricts the buyer’s use of that part, and, in turn, that same restriction is placed on the part kept by the landowner. Such an easement usu[ally] arises when the,landowner creates a common scheme of development for smaller tracts that are carved out of the original tract.”
Black’s Law Dictionary 550 (8th ed.2004).
In this case, the property owners argued that Clarence Beasley developed the 160-acre tract pursuant to a common scheme. They asserted that the original conveyance of the two parcels constituting the CVS property was made subject to restrictive covenants, that those restrictive covenants attached to and ran with the land, that those restrictive covenants benefited all the owners of property in Beasley Spring Acres, and that any and all owners of the other lots in that same development were entitled to enforce the restrictive covenants. Thus, they alleged a reciprocal-negative-easement theory. If the property owners succeed on their theory, then the “dominant estate,” for purposes of enforcing the restrictive covenants, is vested in any owner of property in the development. Collins v. Rodgers, 938 So.2d 379 (Ala.2006). For these reasons, we reject the first argument raised by Hun Es Tu Malade and the Slymans.
“II. The trial court erred in granting summary judgment based on a legal theory not pled, not supported by admissible evidence, and when the only admissible evidence in the record demonstrated the absence of a neighborhood scheme.
“III. In the alternative, treating as done that which should have been done, [Hun Es Tu Malade and the Slymans are] entitled to summary judgment [on the basis] that Beasley did not develop his property pursuant to a neighborhood scheme.”
Hun Es Tu Malade and the Slymans next argue that the property owners did not plead a theory of a common scheme of development and, therefore, that the trial court erred in ruling in favor of the property owners on the basis of that theory. We disagree.
The record filed with this Court indicates that, in answering the complaint, Hun Es Tu Malade asserted that “no common scheme of development exists or has ever existed which includes the property of plaintiffs and the developer.” This pleading was filed on July 27, 2005; the trial court did not enter a summary judgment until October 17, 2005. By rebutting this *65 theory in its answer, it appears that Hun Es Tu Malade understood that the property owners were asserting that Clarence Beasley had developed Beasley Spring Acres pursuant to a common scheme of development. However, in addition to the fact that Hun Es Tu Malade attempted to rebut the theory in its answer, it is apparent from a reading of the entire record that whether there had been a common scheme of development was at issue. Thus, we dispose of the argument that the property owners did not properly plead that the property had been developed pursuant to a common scheme of development.
Next, Hun Es Tu Malade and the Sly-mans argue that, even if the property owners properly pleaded that the property had been developed pursuant to a common scheme, they failed to establish that Clarence Beasley had, in fact, developed his property pursuant to a common scheme. This Court has recognized repeatedly that an owner of property may adopt a common scheme of development for his property by dividing his property into smaller lots or parcels and conveying those parcels with uniform restrictions. See Collins v. Rodgers, 938 So.2d at 393 (discussing numerous cases involving reciprocal negative easements).
For example, in Scheuer v. Britt, 218 Ala. 270, 118 So. 658 (1928), this Court stated:
“ “Where the owner of a tract of land adopts a general scheme for its improvement, dividing it into lots, and conveying these with uniform restrictions as to the purposes for which the lands may be used, such restrictions create equitable easements in favor of the owners of the several lots, which may be enforced in equity by any one of such owners. Such restrictions are not for the benefit of the grantor only, but for the benefit of all purchasers. The owner of each lot has as appurtenant to his lot a right in the nature of an easement upon the other lots, which he may enforce in equity.
“ Whether such restriction creates a right which inures to the benefit of purchasers is a question of intention, and to create such right it must appear from the terms of the grant, or from the surrounding circumstances, that the grantor intended to create an easement in favor of the purchaser.’ 4 Thompson on Real Property, § 3398.
[[Image here]]
“... [T]he equitable right to enforce such mutual covenants is rested on the fact that the building scheme forms an inducement to buy, and becomes a part of the consideration. The buyer submits to a burden upon his lot because of the fact that a like burden is imposed on his neighbor’s lot, operating to the benefit of both, and carries a mutual burden resting on the seller and the purchaser.”
218 Ala. at 271, 118 So. at 660 (emphasis omitted). Thus, Alabama has recognized that a grantor may create reciprocal negative easements by dividing and conveying his property in smaller lots or parcels if, in conjunction with the conveyances, he includes common restrictions in the deeds to some or all of those parcels. If the grant- or so intended, those common restrictions inure to the benefit of all purchasers from that grantor.
“The question of law which exists in such cases is whether or not the grantor in the deed containing the restriction agreed expressly or impliedly that the restriction is for the benefit of the owner of other property in the subdivision, whether it had been sold or not. Such a contract may be inferred from the circumstances and terms of the in- *66 stroment, and need not be expressed either verbally or in writing. The test is said to be the intention of the grantor in creating the restriction.”
Virgin v. Garrett, 233 Ala. 34, 37, 169 So. 711, 713 (1936).
Thus, we must determine whether the evidence establishes that Clarence Beasley intended a common scheme of development.
“Alabama has recognized that
“ ‘a common building scheme may be evidenced by: 1) universal written restrictions in all of the deeds of the subdivision; 2) restrictions in a substantial number of such deeds; 3) the filing of a plat showing the restrictions; 4) actual conditions in the applicable subdivision; or 5) acceptance of the actual conditions by the lot owners.’ ”
Collins v. Rodgers, 938 So.2d at 393 (quoting Swanson v. Green, 572 So.2d 1246, 1248 (Ala.1990), citing in turn 7 Thompson on Real Property § 3163, p. 124 (1962 repl. vol.)).
In support of their motion for a summary judgment, the property owners submitted copies of 68 deeds by which Clarence Beasley conveyed different parcels from his 160 acres. In addition to the 68 deeds submitted by the property owners, the record also contains copies of deeds submitted to the trial court by Hun Es Tu Malade. Many of these deeds are duplicates of those submitted by the property owners. However, eight deeds, copies of which were submitted by Hun Es Tu Ma-lade, do not appear to have been submitted by the property owners. Thus, we have a total of 76 deeds in the record. Of the 76 original deeds included in the record, Beasley included the residential-only restriction in 64 of the conveyances of his property. One of the deeds executed by Beasley' before his death restricted the grantee from using the property for residential or commercial use. Only 11 of the 76 deeds included in the record failed to include language restricting the use of the property to residential purposes.[15]
We also note that the record contains copies of the deeds by which Beasley conveyed property to Millenia McLemore and by which Beasley conveyed property to Alfred Powers; those properties are now the CVS property.[16] As noted above, Beasley’s original conveyances to McLe-more and to Powers were made on the same day — May 8, 1956. Also as noted above, Beasley’s original conveyances of these properties were made subject to identical restrictive covenants prohibiting commercial use of the properties and prohibiting further subdivision of the properties. The fact that these two conveyances were made on the same date, that they concerned adjacent property, and that they contained identical restrictive covenants also indicates that Beasley intended to create reciprocal easements as to those two properties. See Virgin v. Garrett, supra (discussing the creation of negative *67 reciprocal easements as to two adjacent lots sold by the same grantor at the same time and made subject to same restrictive covenants).
Also evident from a review of the deeds contained in the record is the fact that Beasley included identical restrictions in the four deeds preceding Beasley’s conveyance to McLemore and in the five deeds preceding Beasley’s conveyance to Powers (including the conveyance to McLemore). As discussed in Collins v. Rodgers, 938 So.2d at 393, a negative reciprocal easement must attach, if at all, while the property is held by a common grantor. The conveyances at issue in this case satisfy this requirement.
Additionally, in support of their motion for a summary judgment, the property owners submitted the affidavits of William Kruse and Henry Scheuer, two of the ap-pellees, and Bob and Joan Langford, all of whom owned property in the vicinity of the CVS property. Kruse, Scheuer, and the Langfords attested that when they purchased their property, they were seeking to live in a residential neighborhood that would be free from commercial development.[17] They also attested that they purchased their property with knowledge of the restrictions applicable to their property and to the surrounding property. Finally, they attested that they relied on those deed restrictions in deciding to purchase their property.
Additionally, the record before us indicates that in at least one of the intermediary deeds included in the chain of title to the Deckelman property the grantor referred to “a subdivision” and indicated that all the parcels or lots in the subdivision were subject to the same restrictive covenants. This deed, dated June 1, 1979, from Charlie Carl Bailes and his wife, Irene M. Bailes, to Arthur E. Deckelman and his wife, Barbara K. Deckelman, provided:
“THE SAID PARTIES OF THE FIRST PART do hereby covenant with and represent with the said Parties of the Second Part, their heirs and assigns, that they are lawfully seized in fee of the lot or parcel of land above described; that the same is free of all liens and encumbrances except ad valorem taxes for the tax year 1979; and except the restrictions and restrictive covenants which pertain to all the lots and blocks in the subdivision above described, as they are recorded in Deed Book 235, Page 201 [the conveyance from Beasley to McLemore], in the Office of the Judge of Probate of Madison County, Alabama.”
(Capitalization in original.) It is noteworthy that Deed Book 235, page 201 refers to the recorded deed from Beasley to Millenia McLemore, dated May 1956.
In Scheuer v. Britt, supra, this Court recognized that a reference in a deed to the fact that other lots in the area were subject to the same covenants at issue in that case was “strong evidence, if not conclusive” that the common grantor developed his property pursuant to a common scheme:
“The restrictive covenant in the deed to complainant and others, that ‘all lots sold for residential purposes only,’ is some evidence, in fact strong evidence, if not conclusive, that such general scheme was inaugurated with reference to the subdivision.”
*68 Scheuer, 218 Ala. at 272, 118 So. at 661. Thus, the reference to the “lots and blocks in the subdivision” included in the Bailes-Deckelman deed discussed above indicates that, at least at one time, one or more of the purchasers believed that Beasley had developed his property pursuant to a common scheme.
Thus, in support of their motion for a summary judgment, the property owners presented evidence indicating that Beasley owned a large tract of land; that he sold that tract by conveying numerous smaller parcels; that he included in the vast majority of the deeds involved in those conveyances the same or substantially similar restrictive covenants against commercial development and subdividing the property; that at least some of the purchasers of those parcels relied on the reciprocal nature of those restrictive covenants in deciding to purchase the property; and that, in addition to the three property owners named as plaintiffs in this action, at least some of the other purchasers of property in Beasley Spring Acres believed that Beasley had developed his property pursuant to a common scheme.
This evidence is sufficient to establish that Beasley intended to and did develop his property pursuant to a common scheme. Therefore, all the property originally sold by Beasley was subject to reciprocal negative easements. Because the CVS property was included in the large tract of property developed pursuant to a common scheme, the restrictive covenants, whether express or implied, are applicable to the CVS property. For these reasons, we affirm the order of the trial court enjoining the development of the CVS property for commercial purposes.
We next address that aspect of the trial court’s order in reforming the deeds to the CVS property to grant Hun Es Tu Malade and the Slymans an undivided interest in the two parcels making up the CVS property. Hun Es Tu Malade and the Slymans argue that the trial court erred in ordering this reformation because the mortgagee — the holder of the legal title to Hun Es Tu Malade’s property— was not named as a party to the action. (Hun Es Tu Malade’s brief at 8 and 23; Hun Es Tu Malade’s reply brief at 22-24.) Hun Es Tu Malade also asserts that it did not join the mortgagee as a party and did not file a motion to dismiss the complaint for the property owners’ failure to add an indispensable party because Hun Es Tu Malade believed the property owners were relying on express covenants rather than implied ones; Hun Es Tu Malade believed the claims were meritless and did not want to incur the additional expenses it would have cost to join the mortgagee; and Hun Es Tu Malade believed that the property owners had become convinced that their claims would not succeed. (Hun Es Tu Malade’s reply brief at 22-24.) We reject these arguments.
In Frander & Frander, Inc. v. Griffen, 457 So.2d 375 (Ala.1984), this Court addressed the claim that a mortgagee was an indispensable party in an action seeking equitable remedies against homeowners who were alleged to have violated the restrictive covenants applicable to their property. The Court noted the differences between an “indispensable party” and a “necessary party” and stated:
“We are unable to see how [the mortgagee] could be called an indispensable party in this instance. Even though not a party to the action, [the mortgagee’s] interests have been protected by the mortgagors, Norma and Theodore Day, since they are seeking the same result as [the mortgagee]. This would not make [the mortgagee] an indispensable party, but rather, at most, a necessary party, and thus an equitable judgment *69 could be entered affecting [the mortgagee]. If, however, [the mortgagee] decides that its interests have not been adequately represented by the Days, it has the option of asserting any claims it may have in an independent action. See McClenney & Son v. Reimer, 435 So.2d 50 (Ala.1983). This being the case, we reject appellants’ contention that the order is void for failure to join an indispensable party, and proceed to a discussion of the main issue for our review on appeal.”
457 So.2d at 377.
In this case, we are presented with a factual situation nearly identical to that presented in Frander & Frander. As in Frander & Frander, the mortgagor in this action, Hun Es Tu Malade, was named as a party. Also as in Frander & Frander, the mortgagor in this case, Hun Es Tu Malade, opposed the equitable relief sought by the property owners, which, in this case was the reformation of the deeds. Thus, we conclude that Hun Es Tu Malade was present in this action to protect the mortgagee’s interests. Moreover, the validity of this conclusion does not depend on whether the property owners were relying on express or implied covenants. For that reason, we conclude that the mortgagee was not an indispensable party to this action and that the judgment entered by the trial court was not void for failure to join an indispensable party.
Further, as noted in Frander & Frander, supra, if the mortgagee decides that its interests have not been adequately represented by Hun Es Tu Malade, it has the option of asserting any claims it may have in a separate action. For these reasons, we reject Hun Es Tu Malade’s contention that the trial court’s order is void because it failed to join an indispensable party.
“IV. The law does not allow judgments to he entered without regard to affirmative defenses. ”
Hun Es Tu Malade and the Slymans next argue that the trial court erred in entering a summary judgment for the property owners without giving Hun Es Tu Malade and the Slymans an opportunity to litigate their affirmative defenses. We find no merit in this argument.
Hun Es Tu Malade and the Slymans were unquestionably aware that the property owners were seeking a summary judgment on their claims. Hun Es Tu Malade and the Slymans were also unquestionably aware that the property owners relied on the express restrictions contained in the chain of title to the CVS property; Hun Es Tu Malade and the Slymans were also aware that the property owners were relying on the theory that Beasley had developed his property pursuant to a common scheme. As admitted in its brief, Hun Es Tu Malade answered the property owners’ complaint by asserting those affirmative defenses relevant to a claim of development by a common scheme. (Hun Es Tu Malade’s brief at 60.) In addition to answering these allegations, Hun Es Tu Malade also asserted that if the covenants were deemed to be applicable to the property, they should not be enforced because the circumstances of the neighborhood had changed and because enforcement of the covenants would work a hardship on it.
Although Hun Es Tu Malade raised the affirmative defenses in its answer, Hun Es Tu Malade failed to present any evidence of these defenses when opposing the property owners’ summary-judgment motion. In opposing the property owners’ summary-judgment motion, Hun Es Tu Ma-lade relied only on the materials it had previously submitted in support of its own *70 summary-judgment motion.[18] Nothing in those materials supported the affirmative defenses of changed circumstances and hardship.
A trial court can rule on only those issues and arguments properly presented to it. A motion for a summary judgment is properly presented when the movant produces evidence tending to show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. Upon such a showing, the burden then shifts to the nonmovant to offer, if possible, evidence tending to establish that genuine issues of material fact do indeed exist. Evidence tending to establish an affirmative defense is the type of evidence that should be submitted in opposition to a motion for a summary judgment, if the nonmovant intends to rely on those defenses to defeat the claims.
Thus, if Hun Es Tu Malade intended to rely on the affirmative defenses of hardship and changed circumstances to defeat the property owners’ motion for a summary judgment, the proper time to submit evidence in support of the affirmative defenses was before the trial court ruled on the pending summary-judgment motion. Hun Es Tu Malade did not do so. In fact, Hun Es Tu Malade did just the opposite at the hearing before the trial court on the property owners’ motion for a summary judgment — Hun Es Tu Malade conceded that no genuine issues of material fact existed and that the trial court could resolve the dispute as a matter of law.
Hun Es Tu Malade and the Slymans argue that, before the trial court, they agreed that no genuine issues of material fact existed only because they were unaware that the trial court was considering a common-scheme theory. However, as stated above, the record indicates that Hun Es Tu Malade and the Slymans were aware of this theory of relief. For these reasons, we find no error in the trial court’s entering a summary judgment in favor of the property owners without allowing Hun Es Tu Malade and the Slymans another opportunity to present evidence in support of its affirmative defenses.
“V. The injunction is invalid for failure to specify the neighborhood subjected to the covenants. ”
Hun Es Tu Malade and the Sly-mans next argue that the trial court’s order failed to comply with Rule 65(d)(2), Ala. R. Civ. P., which provides:
“(2) Every order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained....”
Hun Es Tu Malade asserts that, in order to comply with this rule, the trial court must “specify the exact neighborhood covered by the order and the exact covenants burdening all lots in the neighborhood, and make it clear that all tract owners were enjoined from violating the covenants embodied in the scheme.” (Hun Es Tu Ma-lade’s brief at 62-63.)
We disagree with this interpretation of Rule 65(d)(2), Ala. R. Civ. P. The trial court’s order in this case specified that the covenants contained in the chain of title to the CVS property ran with the land and that they were valid, binding, and enforceable covenants and attached to and burdened the CVS property. The trial court *71 also found that Hun Es Tu Malade had improperly constructed a commercial building on the CVS property, in violation of the deed restrictions and it enjoined Hun Es Tu Malade from using the building or the property for commercial purposes.
We find nothing vague about the trial court’s injunction. The CVS property was the property at issue in this case. The trial court’s injunction clearly addresses that property. The restrictions against commercial use and against further subdivision were the restrictions at issue. Those are the restrictions addressed in the trial court’s order. The trial court’s injunction addresses Hun Es Tu Malade, a party to this action, and prohibits Hun Es Tu Malade from using the CVS property in any way that violates the covenants. For these reasons, this order is sufficiently specific and does not violate Rule 65(d)(2), Ala. R. Civ. P.
For the foregoing reasons, we affirm the summary judgment in favor of the property owners.
1051148 — AFFIRMED.
1051222 — AFFIRMED.
NABERS, C.J., and SEE, HARWOOD, and BOLIN, JJ., concur.

.The property owners purported to assert claims on behalf of all other property owners in Beasley Springs Acres. However, the action was not certified for class-action treatment. The three named individuals are the only appellees.

. The record indicates that Beasley inherited this property in 1904.

. Upon the death of Mildred Beasley, Clarence Beasley continued to convey parcels of land from the original acreage. Additionally, upon Clarence's death, the executor of Clarence’s estate or the trustee of a trust estab *58 lished in Clarence’s will conveyed some of the remaining property. Thus, in some of the deeds Clarence Beasley and Mildred Beasley, a married couple, are named as the grantors; in some deeds, Clarence Beasley, a widower, is named as the grantor; and in some, the executor or trustee of Clarence's estate is named as the grantor.

. The parties state that Clarence Beasley created 90 parcels out of the original 160-acre tract. The property owners also state that they submitted as evidence copies of the deeds involved in each conveyance made by Beasley. However, the record before this Court contains copies of only 76 deeds. Thus, it is unclear whether the parties are incorrect as to the number of existing parcels, whether some of the deeds are missing from the record, or whether some of the deeds contained in the record represent more than 1 of the 90 parcels purportedly conveyed by Beasley. Because this is a court of appellate review, we must work from the record before us; however, this discrepancy does not impact our analysis of this case.

. This deed did not specifically mention restrictions or restrictive covenants; however, by virtue of the quitclaim deed, Slyman Construction Company warranted that it was conveying only the title it actually held.

. The sole member of FHT, LLC, is Foy Tatum. Foy Tatum is also the "manager" of Hun Es Tu Malade? # 16, LLC.

. When this document was executed, according to the deeds, Slyman Construction Company had already conveyed the Harris property to the Slymans in their individual capacity. However, the “Declaration of Property Use and Removing Restrictions” document executed by Deckelman did not acknowledge that fact.

.Deckelman actually conveyed the property to Schreiner Development, LLC. The record does not explain the distinction between the two entities.

. When certain of the property owners in Beasley Spring Acres learned of the “Declarations of Property Use and Removing Restrictions,” they retained legal counsel. On behalf of the property owners, counsel sent letters to all entities involved in the "Declarations of Property Use and Removing Restrictions,” advising them of the residential restrictions that applied to the lots in Beasley Spring Acres. Counsel also attached a copy of an order entered in earlier litigation involving Beasley Spring Acres.
In this earlier litigation, certain owners of property located in Beasley Spring Acres sought to enjoin the erection of a billboard sign on a lot within Beasley Spring Acres. The parties to that litigation stipulated that the trial court could enter a consent judgment, and the trial court issued an order accepting that stipulation. In that stipulation, the parties agreed that the restrictions applicable to the defendant's property were binding and valid, that they ran with the land, and that the defendant would remove any billboard or framing from the parcel in issue. The property owners also recognized and acknowledged that the defendant had already placed three or four billboards on other property included within the Beasley Spring Acres development and that those billboards would not be impacted or addressed by this consent judgment.

. The property owners asserted that they could not raise the funds necessary to post the required bond, as increased by the trial court.

. In support of their motion for a summary judgment, the property owners filed a lengthy memorandum of law and exhibits. As exhibits, the property owners attached copies of the deeds by which Clarence Beasley and Mildred Beasley conveyed the parcels located in Beasley Spring Acres; photographs of numerous homes located in Beasley Spring Acres; copies of the deeds from Clarence Beasley and Mildred Beasley relating to the CVS property now owned by Hun Es Tu Malade and the Slymans; copies of the deeds representing the conveyances specifically applicable to the Deckelman properly; copies of the deeds representing the conveyances specifically applicable to the Harris property; copies of letters sent in 2002 by attorneys for certain property owners in Beasley Spring Acres to other persons in Beasley Spring Acres notifying them of the restrictive covenants and alleged violations thereof; copies of the "Declarations of Property Use and Removing Restrictions” filed by Harris and Deckelman; copies of a court order from prior litigation relating to restrictive covenants applicable to Beasley Spring Acres; copies of July 1, 2004, letters sent to certain property owners regarding the restrictive covenants of Beasley Spring Acres and alleged violations thereof; copies of November 10, 2004, letters sent to certain property owners regarding the restrictive covenants of Beasley Spring Acres and alleged violations thereof; copies of deeds specifically involving Hun Es Tu Malade; copies of letters dated June 2005 and addressed to the Sly-mans and to Schreiner Development, request *62 ing assurances that the construction occurring on the CVS property was for residential purposes; and affidavits of the property owners.
The materials filed by Hun Es Tu Malade in support of its motion for a summary judgment consisted of a brief; the affidavit of Theresa Bayer, a title specialist who examined the deeds to property located in Beasley Spring Acres and who summarized her findings as to those deeds; copies of the deeds examined by Bayer; and an affidavit of Joel Brown, who attested that the attorney for the property owners had stipulated in open court that Beasley Spring Acres consisted of only three lots and that none of the property owners owned those three lots.
In support of their motion for a summary judgment, the Slymans submitted copies of the deeds applicable to the CVS property.

. The trial court ordered the clerk of the circuit court to place under seal those pleadings and documents submitted by Hun Es Tu Malade that contained information regarding the parties' attempts at settlement. The trial court also struck from the record other filings *63 that contained objectionable or inadmissible evidence.

. Neither Hun Es Tu Malade nor the Sly-mans elected to order a transcript of the hearing held before the trial court on the summary-judgment motions.

. In their brief to this Court in case no. 1051222, the Slymans did not state any issues for review nor did they present any argu *64 ments for consideration by this Court. However, they adopted every issue and argument presented by Hun Es Tu Malade. Thus, although our discussion and analysis is directed to Hun Es Tu Malade, the discussion and analysis applies equally to the Slymans.

. It is also significant that 6 of the 11 deeds that contained no restrictions against commercial use were executed by the executor of Beasley's estate or the trustee of a trust established by his will after his death. Of the deeds conveyed by Beasley himself before his death, only five failed to restrict the grantee's use to a residential purpose.

. Hun Es Tu Malade does not dispute that these original conveyances from Beasley to McLemore and from Beasley to Powers were made subject to these restrictive covenants and that the McLemore and Powers properties ultimately were conveyed to Linda Harris and Barbara Deckelman. Hun Es Tu Malade also does not dispute that the residential-only covenant and the no-further-subdivision covenant are found in the chain of title to the CVS properly. (Hun Es Tu Malade’s brief at 9.)

. None of these property owners purchased their property directly from Clarence Beasley. The Langfords purchased their property in 1989; Scheuer purchased his property in 1991; and Kruse purchased his property in 1995.

. See note 11, supra, for a listing of the materials filed by Hun Es Tu Malade in support of its motion for a summary judgment.